1  LATHAM & WATKINS
2    Joel E. Krischer (CA Bar No. 066489)
     Shireen B. Rahnema (CA Bar No. 198083)
     Kathryn M. Davis (CA Bar No. 199494)
3    Stuart G. Nielson (CA Bar No. 218046)
     Janda D. Robb (CA Bar No. 218109)
4  633 West Fifth Street, Suite 4000
   Los Angeles, California 90071-2007
5  Telephone: (213) 485-1234
   Facsimile: (213) 891-8763
6
   Attorneys for Plaintiffs
7

**FILED**
CLERK, U.S. DISTRICT COURT

AUG 1 4 2002

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

RECEIVED
BUT NOT FILED

JUN - 3 2002

CLERK, U.S. DISTRICT COURT
CENTRAL DIST OF CALIF
WESTERN DIVISION
BY _____ DEPUTY

8              UNITED STATES DISTRICT COURT
9       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
10

11  JAMES HYDRICK, *et al.*,          CASE NO. CV 98-7167 TJH (RNBx)

12                    Plaintiffs,     [PROPOSED] SECOND AMENDED
                                      COMPLAINT FOR INJUNCTIVE AND
13      vs.                           DECLARATORY RELIEF; AND
                                      MONETARY DAMAGES
14  PETER WILSON, *et al.*,
                                      CLASS ACTION
15                    Defendants
16
17
18

19          Based on information and belief, Plaintiffs Joseph Carrocci, Roy

20  Alvin Davis, Kenneth Herman, James Hydrick, Michael Ray Jackson, Trell James

21  Mercer, Jr., Terry Myers, Alan Rigby, and Frank Sisneroz ("Plaintiffs" or

22  "Representative Plaintiffs"), for themselves and on behalf of all others similarly

23  situated, allege against Defendants in their individual and official capacities, (1)

24  Stephen Mayberg, Director of the California Department of Mental Health; (2) Cal

25  A. Terhune, Director of the California Department of Corrections; (3) Jon

26  DeMorales, former Executive Director of Atascadero State Hospital ("ASH"); (4)

27  Craig Nelson, Senior Psychologist Specialist at ASH; (5) Grenda Ernst, Clinical

28  Administrator at ASH; and (6) Melvin E. Hunter, Executive Director of ASH

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES

ENTERED ON ICMS

AUG 29 2002

("Defendants"), as follows:

## NATURE OF THIS ACTION

1.     This is a class action brought pursuant to 42 U.S.C. § 1983 and the Constitutions and laws of the United States of America and the State of California, on behalf of all individuals confined at ASH, presently and in the future, pursuant to the Sexually Violent Predator Act (the "SVP Act"), California Welfare & Institutions Code §§ 6600, *et seq.*, (the "SVPs"), as of September 2, 1997, the date specified in the Stipulation and Order Granting Class Certification filed on April 13, 2001. (The SVP Class is more fully defined in paragraphs 19-23.)

2.     Defendants have failed to comply with the material provisions of the SVP Act, various other applicable provisions of the California Welfare & Institutions Code, and the Constitutions and laws of the United States of America and the State of California, to the detriment of those confined pursuant to the SVP Act. Defendants have acted with knowing, reckless and callous disregard of the constitutional rights of SVPs, who are in the custody of the California Department of Mental Health pursuant to the SVP Act. Defendants' policies, practices and customs result in, among other things, conditions of confinement that are punitive in nature, that violate the rights of the SVPs and that render the SVP Act punitive as applied, as set forth more fully below.

## JURISDICTION AND VENUE

3.     This Court has subject matter and supplemental jurisdiction over the claims and causes of action described herein pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367(a) and 42 U.S.C. § 1983.

4.     Venue is proper in the Central District of California because a substantial number of SVPs are confined at ASH, which is located therein.

5.     Personal jurisdiction over Defendants is proper in this Court for the following reasons:

a.     Defendants are domiciled within the State of California and are or were employed by the State of California at all times relevant to this suit.

b.     Defendants' polices and practices affect institutions and individuals in the State of California.

c.     Defendants establish(ed) and enforce(d) policies, practices and customs with the knowledge that such conduct has caused and will continue to cause injury in the State of California.

## THE PARTIES

### Representative Plaintiffs and the SVP Act

6.     The Representative Plaintiffs who bring this action for themselves and on behalf of all others similarly situated (the "SVP Class" or the "SVPs"), defined *infra*, and who are confined at ASH pursuant to the SVP Act are: Joseph Carrocci, Roy Alvin Davis, Kenneth Herman, James Hydrick, Michael Ray Jackson, Trell James Mercer, Jr., Terry Myers, Alan Rigby, and Frank Sisneroz.

7.     The SVP Act defines a "sexually violent predator" as "a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."

8.     A "diagnosed mental disorder" includes "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others."

9.     "Danger to the health and safety of others" does not require proof of a recent overt act while the offender is in custody.

10.     A "predatory" act is directed toward a stranger, a casual acquaintance, or a person with whom a relationship is established for the purpose

1    of victimization.

2           11.    The SVP Act outlines the commitment process for SVPs.  Six

3    months before being released from prison, a potential SVP is evaluated by the

4    Department of Corrections, the Board of Prison Terms and the State Department of

5    Mental Health.  The district attorney or counsel for the county in which the person

6    was convicted then files a petition for commitment.  The Superior Court must

7    determine whether there is probable cause to believe that the individual is likely to

8    engage in sexually violent predatory criminal behavior upon his or her release.  If

9    the Superior Court determines that probable cause does not exist, it must dismiss

10   the petition.  If the Superior Court finds that probable cause does exist, it must

11   order the person to remain in custody pending trial to determine whether the

12   individual is, by reason of a diagnosed mental disorder, a danger to the health and

13   safety of others in that the person is likely to engage in acts of sexual violence.  If

14   the Superior Court or jury makes such a finding, then the person is committed for

15   two years to the custody of the State Department of Mental Health for treatment

16   and confinement in a facility designated by the Director of Mental Health.  The

17   person may not be held longer than two years unless a new petition is filed and a

18   subsequent extended commitment is obtained.

19          12.    Once each year, the committed person has a right to a show

20   cause hearing to determine whether facts exist to warrant a hearing on whether the

21   person's condition has changed such that he or she does not pose a danger to the

22   health and safety of others.  If the Superior Court at the show cause hearing

23   determines that probable cause exists to believe the person's condition has

24   changed, then another hearing is held at which the State must show that the person

25   remains a danger to the health and safety of others and is likely to engage in

26   sexually violent behavior.  If the Superior Court or jury finds against the

27   committed person at the latter hearing, then the period of confinement shall run for

28   two years from the date of this finding.  If the Superior Court or jury finds for the

1  committed person, then the person must be released.

2         13.    All Representative Plaintiffs and other members of the SVP

3  Class are or were held in custody pursuant to the SVP Act and are in various stages

4  of the proceedings described above.

5  <div align="center">**Defendants**</div>

6         14.    Stephen Mayberg, Director of the California Department of

7  Mental Health; Cal A. Terhune, Director of the California Department of

8  Corrections; Jon DeMorales, former Executive Director of ASH; Craig Nelson,

9  Senior Psychologist Specialist at ASH; Grenda Ernst, Clinical Administrator at

10  ASH; and Melvin Hunter, Executive Director of ASH, establish(ed) and enforce(d)

11  the policies, practices and customs that determine the programming, treatment,

12  location and conditions of confinement for all SVPs at all times relevant to this

13  suit.

14         15.    All members of the SVP Class are or were confined pursuant to

15  the SVP Act and, thus, are directed to be in the custody of the State Department of

16  Mental Health.  The SVP Act authorizes the State Department of Mental Health to

17  establish programming and treatment for all persons committed under the SVP

18  Act.  The SVP Act also authorizes the Director of the Department of Mental Health

19  to determine the location where individuals are confined pursuant to the SVP Act.

20         16.    Defendants are or were employees of the State of California,

21  are or were clothed with the authority of state law and act(ed) under color of state

22  law, that is, under color of the Constitution, statutes, laws, rules, regulations, and

23  customs of the State of California at all times relevant to this suit.

24         17.    Defendants' policies, practices and customs have created

25  punitive and improper conditions that infringe on the rights of SVPs.  Furthermore,

26  Defendants personally knew of these conditions and punishments, and Defendants'

27  disregard of such caused and continues to cause injuries to the SVPs as described

28  herein.  Finally, Defendants' pattern and practice of applying these conditions and

1   punishments to SVPs was applied and continues to be applied, with reckless and

2   callous disregard of the rights of the SVPs.

3       18.    To the extent that each Defendant infringed and infringes upon

4   the rights of SVPs as established by the conditional and statutory standards

5   described below, the Defendant acted in his or her official and/or his or her

6   individual capacities.

## CLASS ACTION ALLEGATIONS

### Definition of the Plaintiff Class

9       19.    Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs

10  bring this action for themselves and on behalf of a class of persons consisting of all

11  individuals who are presently confined or who will be confined at ASH pursuant to

12  any provision of the SVP Act, as of September 2, 1997 (the date specified in the

13  Stipulation and Order Granting Class Certification filed on April 13, 2001).

14  Plaintiffs requested certification pursuant to one or more of the statutory provisions

15  as described below (hereinafter referred to as the "SVP Class"):

16       a.    certification pursuant to Federal Rule of Civil Procedure

17  23(b)(3), or

18       b.    certification pursuant to Federal Rule of Civil Procedure

19  23(b)(2), or

20       c.    certification of one class pursuant to Federal Rule of

21  Civil Procedure 23(b)(2) and a second class pursuant to Federal Rule of Civil

22  Procedure 23(b)(3).

23       20.    The SVP Class, as defined herein, includes all individuals

24  confined at ASH pursuant to the SVP Act, regardless of which of the

25  aforementioned provisions provides the basis for class certification.

26       21.    The SVP Class includes all individuals in custody at ASH

27  pursuant to the SVP Act, regardless of their stage in the commitment process. For

28  example, the SVP Class includes individuals awaiting their probable cause hearing,

1  individuals awaiting their trial or commitment hearing, and individuals committed

2  pursuant to the SVP Act.

3       22.    The SVP Class includes all individuals confined at ASH

4  pursuant to the SVP Act.  However, on information and belief, some individuals

5  have been and continue to be confined at locations other than ASH pursuant to the

6  SVP Act.  Plaintiffs may seek to expand the SVP Class to include all individuals

7  confined pursuant to the SVP Act, including those confined at locations other than

8  ASH, if such facts arise through discovery.

9       23.    Plaintiffs and members of the SVP Class may also seek to

10  amend this complaint further in order to establish subclasses including, but not

11  limited to, one or more of the following:

12            a.    A subclass of patients confined pursuant to the SVP Act

13  who have not had their probable cause hearings;

14            b.    A subclass of patients confined pursuant to the SVP Act

15  who have had their probable cause hearings and are currently awaiting trial;

16            c.    A subclass of patients who have had their probable cause

17  hearings and commitment proceedings, and are confined as civil commitments

18  pursuant to the SVP Act;

19            d.    A subclass of patients confined to ASH pursuant to any

20  provision of the SVP Act;

21            e.    A subclass of patients confined to any location other than

22  ASH pursuant to any provision of the SVP Act;

23            f.    Any additional subclass or subclasses of patients

24  confined pursuant to any provision of the SVP Act who have suffered injuries

25  necessitating compensatory damages, to be determined at a later stage in these

26  proceedings.

27                         **Rule 23(a) Prerequisites**

28       24.    The prerequisites to a class action under Rule 23(a) of the

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

1  Federal Rules of Civil Procedure exist:

2          a.   **Numerosity:**  The members of the SVP Class are so

3  numerous that joinder of all class members is impracticable.  While the exact

4  number of SVPs is unknown to the Representative Plaintiffs at this time, there are

5  at least 250 individuals currently in custody at ASH pursuant to the SVP Act, an

6  unknown number currently being held at other locations, and potentially hundreds

7  more that will be held at ASH and other locations in the future.  Defendants are

8  believed to have in their actual or constructive possession records that disclose

9  information regarding, among other things, the names and locations of the SVPs

10  currently confined pursuant to the SVP Act.

11          b.   **Commonality:**  Common questions of law and fact exist

12  as to all members of the SVP Class and predominate over questions affecting

13  individual members of the SVP Class.  Questions of law and fact common to the

14  SVP Class include, but are not limited to, the following:

15                  (1)   Whether the rights of SVPs pursuant to 42 U.S.C.

16  § 1983 and/or the Constitution of the United States of America have been violated

17  due to the policies, practices and customs of the Defendants;

18                  (2)   Whether the rights of SVPs, as civil commitments

19  under the SVP Act, have been violated due to the policies, practices and customs

20  of the Defendants;

21                  (3)   Whether the rights of SVPs pursuant to the

22  Constitution of the State of California have been violated due to the policies,

23  practices and customs of the Defendants;

24                  (4)   Whether the rights of SVPs have been violated due

25  to policies, practices and customs of the Defendants that determine confinement

26  locations for SVPs.

27          c.   **Typicality:**  The claims of the Representative Plaintiffs

28  are typical of the claims of all members of the SVP Class because all SVPs are or

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

1  will be detrimentally affected by Defendants' policies, practices and customs as

2  complained of herein.  The claims of the Representatives Plaintiffs are also typical

3  of the claims of the other members of the SVP Class in that the Representative

4  Plaintiffs, like the other members of the SVP Class, are or will be confined

5  pursuant to the SVP Act, and are or will be affected by Defendants' policies,

6  practices and customs establishing the conditions of confinement for SVPs, as

7  complained of herein.

8          d.  **Adequacy of Representation:**  The Representative

9  Plaintiffs will fairly and adequately protect the interests of the SVP Class and are

10  represented by counsel competent and experienced in litigation.  The

11  Representative Plaintiffs are members of the SVP Class with claims typical of the

12  claims of all class members.  The Representative Plaintiffs do not have interests

13  that are antagonistic to or in conflict with those persons whom the Representative

14  Plaintiffs seek to represent.

15          **Rule 23(b)(2) Prerequisites**

16      25.  **Appropriate Relief:**  To the extent that the SVP Class

17  proceeds pursuant to Rule 23(b)(2), the Defendants have created and enforced

18  policies, practices and customs that are generally applicable to the SVP Class,

19  thereby making appropriate final injunctive relief or corresponding declaratory

20  relief with respect to the SVP Class as a whole.  More specifically, Defendants

21  have created and will create, implement and enforce policies, practices and

22  customs applicable to all members of the SVP Class.  Similarly, Defendants have

23  failed and will fail to create, implement and enforce appropriate policies, practices

24  and customs applicable to all members of the SVP Class, as described more fully

25  below.

26      26.  **Notice:**  On information and belief, Defendants maintain or

27  have access to records containing information regarding, among other things, the

28  names and locations of all individuals who are confined pursuant to the SVP Act

1  and, thus, who are affected by the polices and practices complained of herein.  If

2  Defendants disclose the locations of current SVPs, notification can be provided by

3  posting in a location accessible to class members at ASH and other facilities where

4  SVPs are confined.

5  <div align="center">**Rule 23(b)(3) Prerequisites**</div>

6  27.  **Common Questions Predominate**: To the extent that the SVP

7  Class proceeds pursuant to Rule 23(b)(3), questions of law or fact common to the

8  members of the class predominate over any questions affecting only individual

9  members.  The causes of action contained herein focus on the conditions of

10  confinement created by Defendants' polices, customs, patterns and practices.  All

11  SVPs have been and will continue to be injured by these conditions, regardless of

12  variations in the treatment of individuals.  The Representative Plaintiffs and the

13  individual class members do not have special interests or unique issues requiring

14  separate litigation.

15  28.  **Class Action is Superior:** A 23(b)(3) class action is superior to

16  other available methods for the fair and efficient adjudication of this controversy

17  because certification of a 23(b)(3) class will significantly reduce the number of

18  individual claims for damages.  Because damages are justified for the conditions

19  and treatment which Defendants impose upon all SVPs, it is likely that individual

20  claims for damages will need to be brought if class certification allows only

21  declaratory or injunctive relief.  Both equitable relief and monetary damages are

22  necessary to remedy the gross infringement of the SVPs' rights caused by the

23  Defendants.  Class certification under 23(b)(3) would allow for declaratory and

24  injunctive relief, as well as monetary damages.  Because the claims contained

25  herein address the conditions of confinement common to all SVPs at ASH,

26  individual class members are unlikely to opt out of a 23(b)(3) class or attempt to

27  bring individual claims for monetary damages.  Certification of a 23(b)(3) class

28  will prevent class members who do not opt out from bringing individual claims for

1  damages, thus, significantly limiting duplication of effort and the possibility of

2  inconsistent results.  Thus, certification of a 23(b)(3) class is a superior means of

3  managing these claims and adjudicating this controversy for all parties involved.

4       29.  **Notice:**  On information and belief, Defendants maintain or

5  have access to records containing information regarding, among other things, the

6  names and locations of all individuals who are confined pursuant to the SVP Act

7  and, thus, who are affected by the polices and practices complained of herein.  If

8  Defendants disclose the names and addresses of past and current SVPs, notice and

9  an opportunity to opt out can be provided as specified by the Court including, but

10  not limited to, one or more of the following methods:

11       a.  Notification by posting in a location accessible to

12  individuals confined pursuant to the SVP Act at ASH and other facilities where

13  SVPs are confined, and/or

14       b.  Notification to the names and addresses, as disclosed by

15  Defendants, of all past and current individuals confined pursuant to the SVP Act at

16  ASH or otherwise, pursuant to the scope of the class certified, by individual letters

17  describing the detailed relief sought in this complaint, and providing an

18  opportunity to opt out of the SVP Class.

19  ## ALLEGATIONS COMMON TO ALL COUNTS/CAUSES OF ACTION

20       30.  The SVPs are not criminals, are not accused of a crime, and are

21  not penal commitments.  Instead, they are held in custody under a civil law (the

22  SVP Act) and have been or are in the process of being <u>civilly</u> committed.

23  Members of the SVP Class have fully completed their penal sentences after being

24  convicted of the crimes described in the SVP Act.  Many SVPs are presently in

25  custody at ASH.  However, an unknown number of SVPs are in custody at various

26  other facilities within the State of California, including state penitentiaries and

27  prisons.

28  ///

## Patient Population at ASH

31.     The patient population at ASH consists of male penal and civil commitments who are confined under a variety of statutes. For example, patients are held at ASH pursuant to the following provisions:

        a.     Patients committed pursuant to California Penal Code § 1026 have been found "not guilty by reason of insanity" and are held at ASH;

        b.     Patients confined pursuant to California Penal Code § 1370 have been found to be "incompetent to stand trial" and are among those held at ASH;

        c.     Patients confined pursuant to California Penal Code § 2684 are mentally ill prisoners who have been transferred to ASH from the Department of Corrections for psychiatric stabilization;

        d.     Patients confined pursuant to California Penal Code § 2962 and § 2964 are "mentally disordered offenders" who serve their parole time at ASH from the Department of Corrections;

        e.     Patients confined pursuant to California Welfare & Institutions Code § 6316 have been found to be "mentally disordered sex offenders" and are among those held at ASH.

## Patients' Rights and the Patients' Access System

32.     The written policies of the Defendants include the following:

33.     ASH's Administrative Directive No. 602 lists the following rights of patients involuntarily detained: the right to treatment services that are provided in ways least restrictive to personal liberty; the right to dignity, privacy, and humane care; the right to be free from harm including excessive restraints, isolation, medication, abuse or neglect; the right to be free of medication as a form of punishment or for staff convenience; the right to prompt medical care; the right to religious freedom and practice; the right to participate in appropriate programs of publicly supported education; the right to social interaction and physical

1   exercise; and the right to be free from hazardous procedures.

2          34.   ASH's Administrative Directive No. 602 provides that the

3   following rights of patients are restricted at ASH:  the right to wear their own

4   clothes; the right to keep and use their own personal possessions and toilet articles;

5   the right to keep and spend reasonable amounts of their own money; the right of

6   access to individual storage space; the right to see visitors each day; the right of

7   reasonable access to telephones to make and receive confidential calls; the right of

8   access to letter writing materials; the right to refuse convulsive treatment; the right

9   to refuse psychosurgery; the right to see and receive the services of a patient

10  advocate; and the right to mail and receive unopened correspondence.

11         35.   According to ASH's Administrative Directive No. 602, a

12  patient's rights may be denied for "good cause," and upon recommendation of the

13  patient's "Interdisciplinary Team" and psychiatrist.  A patient's "Interdisciplinary

14  Team" is a group of ASH staff members who have the authority to make decisions

15  affecting all aspects of a patient's confinement and treatment.

16         36.   ASH's Administrative Directive No. 602 also states that in

17  emergencies, a right may be denied immediately by staff for no longer than

18  twenty-four hours after the emergency action.

19         37.   Finally, ASH's Directive No. 602 declares that a right shall not

20  be withheld or denied as a punitive measure or for treatment purposes.

21         38.   All patients confined at ASH are subject to the "Patient Access

22  System," which assigns each patient an "Access Level" with corresponding rights

23  and privileges.  All patients must sign out whenever they leave their unit (group

24  living space) and sign in whenever they reach their destination.  However, a "Level

25  1" patient may not leave his unit without a staff escort.  A "Level 2" patient wears

26  a red card and may leave his unit only to go to one of a limited number of

27  destinations, not including the courtyard or canteen.  A "Level 3" patient wears an

28  orange card and may go to limited destinations, which may or may not include the

1   law library, canteen or courtyard.

2        39.     According to ASH's "Patient Access System Manual," a

3   patient's "Level" may be reduced after review by his "Interdisciplinary Team."

4        40.     As applied to SVPs, the Patient Access System and other

5   conditions of confinement are punitive in nature and hinder their treatment, and

6   thus are improper when imposed on this class of civil commitments.  These

7   conditions are outlined in the following sections.

8                    **Treatment Program and Phases**

9        41.     Members of the SVP Class confined at ASH are required to

10   undergo a treatment program that includes five phases.

11        42.     Phase One consists of group SVP sessions that provide each

12   SVP with ASH's interpretation of the SVP Act.  If a member of the SVP Class

13   does not attend his "treatment" session, his Access Level is reduced and

14   corresponding privileges are revoked.  If the SVP does attend his treatment session

15   but merely sits quietly without participating, he is said to be "not progressing" in

16   his treatment.  This finding that an SVP is "not progressing" in his treatment is

17   used against him in probable cause and confinement hearings, and prevents him

18   from advancing to Phase Two of the Treatment Program.

19        43.     In order to advance from Phase One of the treatment program,

20   each SVP at ASH must sign a "contract" or statement prepared by ASH's staff

21   which, in effect, acknowledges that the SVP has a "problem" or "illness" and

22   needs "help" or "treatment" at ASH.  This signed statement is used against the

23   individual SVP in his probable cause and confinement hearings.  Furthermore, an

24   individual SVP who refuses to sign this statement is said to be "not progressing"

25   with his treatment.  This purported lack of progress is also used against SVPs in

26   their probable cause and confinement hearings.

27        44.     The contents of Treatment Phases Two through Five involve

28   "cognitive" treatments, including the viewing of videos depicting inappropriate or

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

14

1  violent sexual activities and the corresponding application of strong or repugnant

2  odors, or some other unpleasant sensation, designed to elicit a negative association.

3  There are no established criteria for evaluation of success under this treatment.

4         45.    Defendants' policies indicate that upon successful completion

5  of Phase Five, the individual SVP will be released into the community under the

6  direction of the Conditional Release Program ("CONREP").  In anticipation of this

7  release, SVPs meet with representatives from CONREP to prepare for their

8  eventual release.  According to representatives from CONREP, however, no SVPs

9  have been or will ever be accepted into CONREP.

10        46.    The staff at ASH have been given the discretion to determine

11 when individual SVPs have successfully completed the treatment program and are

12 qualified for release.  At this time, only a handful of SVPs have been allowed into

13 Phase Four and no SVPs have been released under the treatment protocol.

14                  **Punitive Conditions and Improper Punishments**

15        47.    In practice, all of the previously mentioned rights and privileges

16 are restricted and denied as a means to punish SVPs who object to mandatory

17 treatment, arbitrary rules and disciplinary procedures, as well as to punish SVPs

18 for filing this and other lawsuits challenging conditions of their confinement.  This

19 includes polices and practices that permit "Access Level" reductions when SVPs

20 refuse to participate in treatment sessions.

21        48.    In contrast to ASH's Administrative Directives previously

22 discussed, Defendants' policies, practices and customs permit and encourage the

23 involuntary medication of SVPs with psychotropic drugs in non-emergency

24 situations for the convenience of staff and as a means of punishment.

25        49.    Defendants' policies, practices and customs subject SVPs at

26 ASH to forced integration with the other patients, including the penal

27 commitments, despite Defendants' knowledge that this jeopardizes the health,

28 safety and treatment of the SVPs.  SVPs share living, dining, bathing and

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

recreation facilities with individuals serving criminal sentences, and SVPs are subject to either the same or more restrictive conditions as the penal commitments. Many of the conditions are more degrading, arbitrary and/or restrictive than those at California prisons.

50.     SVPs held at locations other than ASH are subject to prison conditions that are punitive by design. Even though they are held in custody pursuant to a civil law, members of the SVP Class that are held at other locations are subject to conditions including, but not limited to, the following: shackles during transport and visits from family and friends; housing with prisoners; prison rules designed for punitive purposes; and the denial of treatment and other rights that must be provided to civil commitments.

51.     The treatment Phases as previously described create a "Catch-22" for the SVPs. In effect, these Phases function to ensure that members of the SVP Class are never released. In order to move out of Phase One, SVPs must sign a statement acknowledging their need for confinement and treatment at ASH. Because this statement is used against SVPs in probable cause and commitment hearings, SVPs are reluctant to sign the statements. If an SVP does not sign the statement, he may not move on to Phase Two and he is said to be not progressing in his treatment. If an SVP does sign the statement, he is considered as having admitted his need for treatment at ASH and can only be released after finishing all phases of treatment at ASH, and upon the approval of the staff at ASH. Furthermore, the SVP treatment program, as applied, is intended to confine SVPs indefinitely, as a form of punishment.

52.     Such punitive treatment is, by design, not therapeutic in nature. Defendants' policies, practices and customs disregard the rights of SVPs by allowing and encouraging these punitive and improper conditions of confinement.

### Unsanitary and Degrading Conditions that Hinder Treatment

53.     Members of the SVP Class are unnecessarily exposed to bodily

1  wastes and fluids including feces, urine, vomit, spit and blood in all areas of ASH,

2  including, but not limited to, the courtyards, bathrooms, hallways and dining

3  rooms. This lack of sanitation at ASH exposes those confined at ASH to

4  tuberculosis, hepatitis and other communicable diseases, thus posing a serious

5  health risk upon them.

6       54.    Certain patients, usually criminal commitments, are employed

7  to serve the food and clean the facilities. The food served to SVPs is often

8  contaminated with spit, urine, rocks, sticks and hair. In addition to contamination

9  due to poor hygiene, the food servers often openly spit in the portions served to

10  SVPs as the SVPs stand in line. Defendants have personal knowledge of this

11  conduct, but Defendants' policies, practices and customs permit and encourage this

12  and other harassment of SVPs.

13       55.    SVPs at ASH are not protected from the penal commitments,

14  including in the courtyard and gymnasium, and the SVPs are subjected to their

15  verbal harassment, physical abuse and sexual assaults. They are targeted and

16  harassed by both patients and staff members because they are openly labeled

17  "sexually violent predators," including by ASH staff. Defendants have personal

18  knowledge of these abuses but Defendants' policies, practices, customs and

19  disregard for the rights of the SVPs permit and encourage the abuse of SVPs.

20       56.    Red light alarms, where approximately ten to twenty staff

21  members surround, restrain and remove the patient, are common at ASH. Such

22  alarms and other tactics are used even when, for instance, a member of the SVP

23  Class orally refuses to participate in a group therapy session even though the SVP

24  does not use forceful resistance.

25       57.    Defendants' policies, practices and customs permit and

26  encourage the regular and public overreaction to the SVPs, often in the form of red

27  light alarms, excessive restraints and forced medication as a means of threatening

28  and intimidating members of the SVP Class. This type of intimidation affects all

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

1 witnesses to such actions, regardless of whether or not individuals have themselves

2 been subjected to forced medication.

3        58.    Defendants' policies, practices, customs, as well as the reckless

4 and callous disregard for rights of the SVPs, are demonstrated by the punitive,

5 degrading and antitherapeutic conditions described herein.

6       **Conditions and Restrictions Improperly Applied to SVPs**

7        59.    The policies, practices and facilities at ASH, some of which

8 may or may not be sufficient for penal commitments, are improper when applied to

9 SVPs.

10        60.    For example, bedrooms do not have electrical outlets, running

11 water, tables or chairs, and cannot be locked from the inside.  SVPs are not

12 permitted to wear their own clothes or keep many of their own possessions,

13 regardless of their past behavior.

14        61.    Similarly, SVPs are required to keep their rooms lit all night

15 long, regardless of their past behavior.

16        62.    SVPs only have access to phones that use a recording informing

17 the recipient that the call has been placed from a correctional facility.  Phone

18 conversations are not private and can be overheard by the staff and other patients.

19        63.    Members of the SVP Class are rarely offered occupational or

20 vocational opportunities and services.  Because SVPs are civil commitments, they

21 must be paid minimum wage (rather than prison wage).  For this and other reasons,

22 including punishment and harassment, only a few SVPs have been given jobs at

23 ASH.

24        64.    Upon arrival at ASH, SVPs are subjected to degrading public

25 strip searches and the use of four-point restraints.  SVPs are also subject to

26 unnecessary and arbitrary searches of their personal belongings.

27        65.    The personal belongings of SVPs are improperly seized and

28 their use unnecessarily restricted, without regard to the histories and risks of

1    individual SVPs.

2         66.    The resources in the law library are insufficient and access to

3    SVPs is improperly restricted.

4         67.    The ability of SVPs to see visitors and spend funds are also

5    improperly restricted and denied.

6         68.    These and other conditions and restrictions are unreasonable

7    and improperly applied to members of the SVP Class.

8                         **FIRST ALLEGED CLAIM**

9    **(Violations of First and Fourteenth Amendments of the United States**

10                              **Constitution)**

11        69.    Plaintiffs incorporate herein Paragraphs 1 through 68 of this

12   Second Amended Complaint.

13        70.    Defendants' policies, practices and customs permit and

14   encourage the punishment of members of the SVP Class for the mere expression of

15   their beliefs, including, but not limited to, punishment for refusing treatment.

16        71.    Defendants' policies, practices and customs include

17   punishments and restrictions that constitute improper interference with the ability

18   of SVPs to assemble peaceably, access the courts, petition the government and

19   refuse treatment.

20        72.    Defendants have personal knowledge of retaliation against

21   members of the SVP Class for participation in lawsuits, but Defendants' policies,

22   practices and customs permit and encourage retaliation.

23        73.    The aforementioned deny the SVPs the rights and protections

24   provided by the First Amendment of the Constitution of the United States of

25   America and Article 1, Section 2 of the Constitution of the State of California.

26   / / /

27   / / /

28   / / /

## SECOND ALLEGED CLAIM

### (Violations of the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, Section 13 of the California Constitution)

74.    Plaintiffs incorporate herein Paragraphs 1 through 73 of this Second Amended Complaint.

75.    Defendants' policies, practices and customs subject SVPs to unreasonable searches; searches as a form of punishment; degrading public strip searches; improper seizures of personal belongings; and the use of unreasonable force and physical restraints.  These policies, practices and customs subject members of the SVP Class to unreasonable searches and seizures, and the unreasonable use of force.

76.    The aforementioned denies the SVPs the rights and protections provided by the Fourth Amendment of the Constitution of the United States of America and Article 1, Section 13 of the Constitution of the State of California.

## THIRD ALLEGED CLAIM

### (Violation of the Ex Post Facto Clause of the United States Constitution)

77.    Plaintiffs incorporate herein Paragraphs 1 through 76 of this Second Amended Complaint.

78.    Because Defendants' policies, practices and customs, as applied, do not grant the SVPs the same status as other civil commitments, do not employ the least restrictive treatments, are not compatible with treatment purposes, are not reasonably related to a legitimate non-punitive goal, and do not comport with substantive due process, they constitute a form of punishment.  Furthermore, the conditions of confinement for SVPs are punitive and often more restrictive than the conditions applied to penal commitments and prisoners.

79.    The aforementioned subject the SVPs to conditions of confinement that are punitive in nature.  Thus, these conditions deny the SVP Class the rights and protections provided by the Ex Post Facto Clause of Article 1,

Section 10 of the Constitution of the United States of America.

## FOURTH ALLEGED CLAIM

### (Violations of the Double Jeopardy Clause of the Fifth Amendment and the Fourteenth Amendment of the United States Constitution)

80.    Plaintiffs incorporate herein Paragraphs 1 through 79 of this Second Amended Complaint.

81.    As described in the THIRD ALLEGED CLAIM, incorporated herein, Defendants' policies, practices and customs, as applied, subject the SVPs to conditions of confinement that are punitive in nature.

82.    The aforementioned punitive conditions deny the SVP Class the rights and protections provided by the Double Jeopardy Clause of the Fifth Amendment of the Constitution of the United States of America.

## FIFTH ALLEGED CLAIM

### (Violations of the Eighth and Fourteenth Amendments of the United States Constitution)

83.    Plaintiffs incorporate herein Paragraphs 1 through 82 of this Second Amended Complaint.

84.    Defendants' polices and practices subject SVPs to restrictive and degrading conditions that constitute cruel and unusual punishment, including, but not limited to, the following: contaminated food, inadequate facilities, excessive punishments, unnecessary restrictions on movement and exercise, improper restrictions on movement, unnecessary seclusion, discriminatory work assignments, forced medication, forced treatment, improper restrictions on law library access, degrading public strip searches and excessive use of force and physical restraints.  Furthermore, the Defendants' polices and practices permit and encourage the reduction of privileges and unnecessary restrictions in response to any SVP's unwillingness to conform to Defendants' program of rehabilitation, in violation of the Eighth Amendment.  Finally, the level of violence tolerated at ASH

1  and the failure to protect members of the SVP Class constitute examples of cruel

2  and unusual punishment.

3          85.   The aforementioned denies the SVP Class the rights and

4  protections provided by the Eighth Amendment of the Constitution of the United

5  States of America.

## SIXTH ALLEGED CLAIM

### (Violations of Procedural Due Process Under the Fourteenth Amendment of the United States Constitution)

9          86.   Plaintiffs incorporate herein Paragraphs 1 through 85 of this

10 Second Amended Complaint.

11         87.   Defendants' policies, practices and customs deprive SVPs of

12 procedural due process under the Fourteenth Amendment.  For example, SVPs

13 experience Access Level reductions, forced treatment, forced medication,

14 unnecessary restrictions on movement, loss of privileges, confiscation of

15 belongings and other punishments all without advance written notice, an

16 opportunity to present evidence on their behalf, a written statement of reasons for

17 disciplinary action and other relevant safeguards.  These polices and practices

18 deprive SVPs of their liberty and property interests without due process of law.

19         88.   The aforementioned denies the SVP Class the rights and

20 protections provided by the Fourteenth Amendment of the Constitution of the

21 United States of America.

## SEVENTH ALLEGED CLAIM

### (Violations of Substantive Due Process Under the Fourteenth Amendment of the United States Constitution)

25         89.   Plaintiffs incorporate herein Paragraphs 1 through 88 of this

26 Second Amended Complaint.

27         90.   Defendants' policies, practices and customs subject SVPs to

28 conditions of confinement that are the same and often worse than the conditions

**Latham & Watkins**
ATTORNEYS AT LAW
LOS ANGELES

under which penal commitments and prisoners are held. The policies, practices and conditions complained of herein, such as forced medication, forced treatment, improper punishments, unsanitary facilities, contaminated food, unrestrained abuses and the tolerance of assaults, are shocking because they are arbitrarily applied to <u>civil</u> commitments intended to be confined to a hospital for treatment purposes.

91.     The aforementioned denies the SVP Class the rights and protections provided by the Fourteenth Amendment of the Constitution of the United States of America.

## EIGHTH ALLEGED CLAIM

### (Violations of Equal Protection under the Fourteenth Amendment of the United States Constitution)

92.     Plaintiffs incorporate herein Paragraphs 1 through 91 of this Second Amended Complaint.

93.     Defendants' policies, practices and customs subject the SVPs to more restrictive, punitive, and degrading conditions than other civil commitments, thus, denying the SVPs equal protection of the laws. Furthermore, other civil commitments, and often penal commitments, receive greater privileges, rights and, as relevant, more humane and proper treatment than the SVPs.

94.     The aforementioned denies the SVP Class the rights and protections provided by the Fourteenth Amendment of the Constitution of the United States of America.

## NINTH ALLEGED CLAIM

### (Violations of the Sixth and Fourteenth Amendments of the United States Constitution)

95.     Plaintiffs incorporate herein Paragraphs 1 through 94 of this Second Amended Complaint.

96.     Defendants' policies, practices and customs include

1   punishments and Access Level reductions that improperly deny or restrict the

2   ability of SVPs to access the legal library and receive legal assistance.

3          97.    Defendants' policies, practices and customs interfere with

4   communications between SVPs and legal personnel by requiring ASH staff to open

5   and view all mail, including mail protected by the attorney-client privilege.

6          98.    Finally, SVPs have experienced Access Level reductions,

7   restrictions of privileges, transfers, harassment and other improper punishments in

8   retaliation for bringing this and other lawsuits.

9          99.    These policies, practices and customs interfere with the ability

10   of SVPs to access the courts and assist counsel in their own defense.

11         100.    The aforementioned denies the SVPs the rights and protections

12   provided by the Sixth Amendment of the Constitution of the United States of

13   America.

14 <center>**TENTH ALLEGED CLAIM**</center>

15 <center>**(Violation of the Right to Privacy)**</center>

16         101.   Plaintiffs incorporate herein Paragraphs 1 through 100 of this

17   Second Amended Complaint.

18         102.   Defendants' policies, practices and customs do not permit

19   privacy in situations including, but not limited to, the following:  when showering,

20   sleeping, using the toilets or participating in therapy sessions.  SVPs are denied

21   privacy irrespective of their individual histories relating to safety and security.

22         103.   The aforementioned denies the SVPs the rights and protections

23   provided by the Fourteenth Amendment of the Constitution of the United States of

24   America and Article 1, Section 1 of the Constitution of the State of California.

25 <center>**PRAYER FOR RELIEF**</center>

26       **WHEREFORE,** Plaintiffs pray for judgment against Defendants on

27   all alleged claims, as follows:

28         1.    Compensatory, punitive and other monetary damages for the

conditions of confinement infringing on the rights of and injuring all class members as described herein, in an amount yet to be determined;

    2.    Declaratory and injunctive relief requiring Defendants to establish and enforce polices and practices that respect and guarantee the rights of Plaintiffs as civil commitments, including, but not limited to, the following:

        a.    Injunctive relief requiring living, eating, recreation and all other facilities that are separate from penal commitments and prisoners;

        b.    Injunctive relief requiring humane, safe and sanitary conditions that are therapeutic, rather than punitive, and that respect the dignity and privacy of Plaintiffs;

        c.    Injunctive relief requiring humane, safe and sanitary living conditions in accordance with the rights provided by the Constitutions and laws of the United States of America and the State of California;

        d.    Injunctive relief requiring the use of the least restrictive means necessary to achieve the civil purposes of confinement;

        e.    Injunctive relief requiring Defendants to respect and guarantee the right of members of the SVP Class to refuse treatment;

        f.    Injunctive relief requiring Defendants to protect members of the SVP Class from verbal and physical harassment and abuse by other patients and staff;

        g.    Injunctive relief providing members of the SVP Class an opportunity to work and earn a wage during their confinement at ASH;

        h.    Injunctive relief requiring Defendants to respect and guarantee the rights and address the grievances discussed herein, to be specified at a future date;

    3.    Ancillary damages, equitable monetary relief and punitive damages where applicable for the conditions of confinement infringing on the rights of individual SVP Class members as described herein, in an amount yet to be

1 | determined;

2 |     4. Attorneys' fees under 42 U.S.C. § 1988, in an amount which

3 | this Court deems just, equitable and proper;

4 |     5. That a class be further certified in accordance with the

5 | Stipulation and Order Granting Class Certification filed on April 13, 2001, with

6 | class relief for compensatory, punitive and other monetary damages where

7 | applicable for the conditions of confinement and injuries to the class in an amount

8 | yet to be determined; and

9 |     6. Such other and further relief as the Court deems just, equitable

10 | and proper.

11 | Dated: June 3, 2002

                 LATHAM & WATKINS
                 Joel E. Krischer
                 Shireen B. Rahnema
                 Kathryn M. Davis
                 Stuart G. Nielson
                 Janda D. Robb

                By_____
                 Stuart G. Nielson
                 Attorneys for Plaintiffs

Latham & Watkins
ATTORNEYS AT LAW
LOS ANGELES