1 | SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
2 | jim@spertuslaw.com
Ezra D. Landes (SBN 253052)
3 | ezra@spertuslaw.com
Luke Kuo (SBN 269213)
4 | luke@spertuslaw.com
1990 South Bundy Dr., Suite 705
5 | Los Angeles, California 90025
Telephone: (310) 826-4700
6 | Facsimile:  (310) 826-4711

7 | Attorneys for Plaintiffs

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12 | KENNETH HERMAN, an individual;
LARRY HARVEY, an individual;
DAVID GREEN, an individual;
13 | TERRY LEAKE, an individual;
MICHAEL ST. MARTIN, an
14 | individual; MICHAEL SEATON, an
individual; for themselves and on
15 | behalf of a class of similarly situated
individuals,
16
Plaintiffs,
17
v.
18
EDMUND G. BROWN, Jr., Governor
19 | of the State of California; JEFFREY
BEARD, Secretary of the California
20 | Department of Corrections and
Rehabilitation; CLIFF ALLENBY,
21 | Acting Director of the California
Department of State Hospitals;
22 | AUDREY KING, Executive Director
of Coalinga State Hospital;
23 | BRANDON PRICE, Hospital
Administrator of Coalinga State
24 | Hospital; SUSAN DAVEY, Hospital
Administrator "Resident II" of
25 | Coalinga State Hospital; DEBRA
BROWN, Assistant Hospital
26 | Administrator of Coalinga State
Hospital; KAREN REED, Acting
27 | Clinical Administrator of Coalinga
State Hospital; CYNTHIA TREVINO,
28 | Assistant Clinical Administrator of
Coalinga State Hospital; JOHN

CASE NO. CV 98-7167 TJH (RNBx)

**THIRD AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**CLASS ACTION**

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700  Facsimile 310-826-4711

*THIRD AMENDED COMPLAINT*

CATANO, Acting Chief of Central Program Services at Coalinga State Hospital; LINDA CLARK, Assistant Chief of Central Program Services at Coalinga State Hospital; ALAN CARLSON, Assistant Chief of Central Program Services at Coalinga State Hospital; DR. ROBERT WITHROW, Medical Director of Coalinga State Hospital; DR. ALAN AZIZIAN, Chief Psychologist of Coalinga State Hospital; and DR. JERRY KASDORF, Head of the Program Development and Curriculum Committee at Coalinga State Hospital,

Defendants.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

*THIRD AMENDED COMPLAINT*

1    Based on information and belief, Plaintiffs complain, aver, and allege as

2    follows:

# I.

## <u>INTRODUCTION</u>

5    1.    Plaintiffs are a class of approximately 900 individuals who are

6    civilly detained at the State Hospital in Coalinga, California ("Coalinga").

7    Plaintiffs are not accused of any crimes.  Plaintiffs have completed their penal

8    sentences after being convicted of crimes and have paid their debts to society,

9    some as long as 17 years ago.  However, California's Sexually Violent Predator

10   Act (the "SVP Act"), Cal. Welf. & Inst. Code §§ 6600-09, provides a framework

11   for Defendants to confine individuals for an indeterminate amount of time

12   beyond the length of their sentences based on Defendants' own evaluators

13   determining that an individual poses a risk of potentially committing a crime in

14   the future.  As a result, on the eve of their anticipated releases from prison,

15   Plaintiffs were each informed by Defendants that despite completing their

16   sentences they would remain in custody and be transferred to Coalinga for

17   indefinite commitment terms.

18   2.    Coalinga is a prison in disguise.  The civil confinement at Coalinga

19   is purportedly based on the offender's mental health and aims to provide

20   treatment that will ultimately allow for the offender's release.  The confinement

21   is not intended as, and cannot legally be, an additional punitive measure.

22   However, Defendants' practices and procedures make it nearly impossible for

23   any Plaintiff to be released from Coalinga, such that the "civil confinement" is in

24   fact an extended, punitive, life prison term.  As Defendants' own employees

25   readily admit, "the general attitude of the Hospital is that these people should

26   *never* be released."

27   3.    The United States Supreme Court allows such "civil confinement"

28   so long as the confinement satisfies procedural and substantive due process

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

2.

safeguards, but Defendants have deprived and continue to deprive Plaintiffs of these due process safeguards.  For example:

a.     Because of overcrowded state courts and chronic and systemic failures plaguing the District Attorney's and Public Defender's Offices, many Plaintiffs are detained at Coalinga for *years* without having a civil commitment trial to determine if they should even be committed under the SVP Act in the first place.  At least 342 Plaintiffs have not had their initial commitment trial, with some still waiting for that trial after *16 years*.

b.     To have any chance of ever being released, Plaintiffs must participate in Defendants' Sex Offender Treatment Program ("SOTP").  However, to progress through treatment, Plaintiffs are required to make certain admissions regarding their "mental disability" and past sex crimes, and those admissions are permanently documented in Plaintiffs' case files and used against them in subsequent recommitment proceedings as grounds to keep Plaintiffs confined.  Plaintiffs' refusal to make admissions about their "mental disability" or past sex crimes is likewise documented and used to show a lack of progress and unsuitability for release, creating the ultimate "Catch-22" dilemma.

c.     Plaintiffs are forcibly injected with anti-psychotropic medications in nonemergency situations in clear violation of their constitutional and statutory rights.

d.     Defendants subject Plaintiffs to constitutionally inadequate conditions of confinement, including failing to provide Plaintiffs with basic medical and dental care, failing to adequately respond to emergency medical situations, chronically depriving Plaintiffs of sleep without legitimate justification, and failing to protect Plaintiffs from violent crimes such as rapes and sexual abuse at the hands of their fellow detainees.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

3.

4.      Since the filing of the Second Amended Complaint ("SAC") in this class action more than 11 years ago, intervening events, such as rulings from the Ninth Circuit Court of Appeals and the transfer of the original plaintiff class from Atascadero State Hospital ("Atascadero") to Coalinga, have altered the nature and scope of this class action to require this Third Amended Complaint ("TAC").  The TAC, brought pursuant to 42 U.S.C. § 1983 and alleging violations of the United States Constitution and the laws of the State of California, seeks a judgment for injunctive and declaratory relief against State officials and employees for their repeated and ongoing deprivation of Plaintiffs' constitutional and statutory rights.

## II.

## BACKGROUND

### A.      The California SVP Act

5.      The SVP Act defines an SVP as a person "convicted of a sexually violent offense . . . who has a diagnosed mental disorder that makes the person a danger to the health and safety of others" in the likelihood that he or she "will engage in sexually violent criminal behavior."  Cal. Welf. & Inst. Code § 6600(a)(1).  The SVP Act has been amended several times during the pendency of this litigation, including on November 7, 2006, by Proposition 83, a voter initiative commonly known as "Jessica's Law," *see* 2006 Cal. Legis. Serv. Prop. 83 (West), and on August 27, 2013, by the California Legislature, *see* 2013 Cal. Legis. Serv. 182 (S.B. 295) (West).  Unless otherwise indicated, the TAC cites to the most recent version of the SVP Act.

### B.      Initial Commitment Process

6.      The SVP Act authorizes the California Department of Corrections and Rehabilitation ("CDCR") to refer a prisoner whom it suspects of meeting the definition of an SVP for evaluation by the Department of State Hospitals

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

*THIRD AMENDED COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700: FACSIMILE 310-826-4711

1   ("CDSH"), formerly the Department of Mental Health.[1]  Cal. Welf. & Inst. Code

2   § 6601(a)(1).  Evaluation of a prisoner under the SVP Act requires the CDSH to

3   follow a "standardized assessment protocol" and consult with two mental health

4   professionals.  *Id.* § 6601(c)-(d).  If the CDSH concludes that a person meets the

5   definition of an SVP, the CDSH then forwards the evaluation report to a district

6   attorney, who then files a petition for commitment in the Superior Court.  *Id.*

7   § 6601(c)-(i).

8        7.    If the Superior Court finds that a petition states sufficient facts that,

9   if true, would constitute probable cause, the court must order the person to be

10  detained and schedule a probable cause hearing within 10 days of the detention

11  order.  *Id.* § 6601.5.  If the Superior Court finds at a probable cause hearing that

12  there is probable cause to believe that a person qualifies as an SVP, the matter is

13  then set for trial.  *Id.* § 6602.  If an individual is found beyond a reasonable doubt

14  at trial to meet the definition of an SVP, he or she is then committed for an

15  "indefinite term" to the custody of the CDSH.  *Id.* § 6604.  Prior to the passage

16  of Jessica's Law in 2006, an SVP would have been committed for a two-year

17  term, after which the district attorney would have had to file another petition

18  every two years to extend the commitment period.  *See id.* § 6604 (2005).

19  Because Jessica's Law requires an indefinite term and is non-retroactive, *see*

20  *People v. Whaley*, 160 Cal. App. 4th 779, 784 (2008), all Plaintiffs committed

21  prior to Jessica's Law are entitled to a subsequent recommitment trial for an

22  indefinite term.  *See People v. Castillo*, 49 Cal. 4th 145, 174 (2010).

23  **C.    Post-Commitment Review**

24       8.    After an SVP detainee is civilly committed, the CDSH must provide

25  annual mental examinations to determine whether the detained individual

26  "currently meets the definition of [an SVP]" and whether he or she is entitled to

27

28  _____

[1] For consistency, all references to the Department of State Hospitals in the TAC include its former entity, the Department of Mental Health.

*THIRD AMENDED COMPLAINT*

conditional or unconditional release.  Cal. Welf. & Inst. Code § 6605.  If the CDSH concludes that a detainee is no longer an SVP, it must petition the Superior Court for a probable cause hearing, and the court may then commence trial to determine the detainee's suitability for conditional or unconditional release.  *Id.*  Subject to restrictions, the detainee may file a petition seeking conditional release.[2]  *Id.* § 6608.

**D.**   **Procedural History**

9.     On September 2, 1998, approximately 200 pro se Plaintiffs in Atascadero filed a civil rights action seeking monetary damages as well as injunctive and declaratory relief against state officials and Atascadero employees.

10.    The Court appointed pro bono counsel in March 1999, and Plaintiffs sought class certification on February 9, 2001.

11.    On April 13, 2001, the Court certified the plaintiff class under Federal Rule of Civil Procedure 23(b)(2), and defined the plaintiff class as "all individuals who are presently confined or who will be confined at [Atascadero] pursuant to any provision of the [SVP Act], as of September 2, 1997."  At the time, the plaintiff class had nine original representative plaintiffs, three of whom remain confined in Coalinga as of the filing of this TAC.

12.    On August 14, 2002, Plaintiffs filed the SAC, primarily challenging their treatment and conditions of confinement at Atascadero.  In pertinent part, the SAC alleged that Defendants violated the Constitution as follows:

a.     Defendants violated the First Amendment by requiring Plaintiffs to make certain incriminating admissions to participate and advance in Defendants' SOTP, and would then use those admissions to prevent Plaintiffs' release during subsequent recommitment proceedings;

---

[2]  The 2013 amendment prohibited an SVP detainee from petitioning for unconditional release.  *See* 2013 Cal. Legis. Serv. 182 (S.B. 295) (West).

*THIRD AMENDED COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr. · Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700 Facsimile 310-826-4711

b.     Defendants violated the Fourth Amendment by conducting unreasonable searches and seizures;

c.     Defendants violated procedural due process under the Fourteenth Amendment by disciplining and forcibly medicating Plaintiffs without the procedural safeguards required under the Constitution;

d.     Defendants violated substantive due process rights under the Fourteenth Amendment by (1) failing to protect Plaintiffs from physical and sexual abuses by non-SVP detainees and Atascadero employees, (2) providing deficient conditions of confinement, and (3) subjecting Plaintiffs to excessive force and bodily restraints; and

e.     Defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating Plaintiffs more punitively than other civilly committed detainees.

13.    Defendants moved to dismiss Plaintiffs' money-damages claims based on qualified immunity.  The Court denied the motion to dismiss, and Defendants filed an interlocutory appeal of the Court's order denying the motion to dismiss.

14.    On August 30, 2007, the Ninth Circuit affirmed the Court's order in part and reversed in part, finding that Defendants were entitled to qualified immunity as to claims for which constitutional rights had not been well established at the time of the alleged misconduct.  *Hydrick v. Hunter*, 500 F.3d 978, 983 (9th Cir. 2007) ("*Hydrick I*").  Defendants filed a petition for writ of certiorari in the United States Supreme Court, and the Supreme Court vacated the opinion and remanded for reconsideration in light of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

15.    On January 12, 2012, the Ninth Circuit held on remand that Defendants were entitled to qualified immunity on claims for money damages, but expressly ruled that "Plaintiffs may proceed with their claims for declaratory

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

7.

*THIRD AMENDED COMPLAINT*

and injunctive relief" on remand. *Hydrick v. Hunter*, 669 F.3d 937, 939-40 (9th Cir. 2012) ("*Hydrick II*").

### III.

### JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Because all Defendants are public officials who reside and perform official duties in California, this Court has personal jurisdiction over all Defendants.

17.     Venue is proper under 28 U.S.C. § 1391(b) within the Central District of California because, when this litigation began, Plaintiffs were housed at Atascadero within the Central District of California and suffered harm within the Central District of California.  Although Defendants or their predecessors relocated some members of plaintiffs' class to Coalinga during the pendency of this litigation, venue remains proper in the Central District of California because Plaintiffs were housed within the Central District of California when the litigation commenced, and they suffered harm within the Central District of California prior to and during the pendency of this litigation.

### IV.

### PARTIES

18.     The Representative Plaintiffs who bring this action for themselves and on behalf of others similarly situated are presently in CDSH custody pursuant to the SVP Act, and are or were in various stages of the SVP commitment process at the time they suffered harm.

**A.**     **Representative Plaintiffs**

***Kenneth Herman* (Subclass I and Subclass II Representative)**

19.     Plaintiff Kenneth Herman is a civil detainee confined in Coalinga under the SVP Act.  Defendants have violated and continue to violate

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

8.

Representative Plaintiff Herman's constitutional rights to a speedy trial to adjudicate his status as an SVP, as well as his First Amendment right not to have his past admissions in the SOTP and his present refusal to participate in the SOTP used against him in subsequent recommitment proceedings for the purpose of prolonging his detention.

20.     Representative Plaintiff Herman is 55 years old and has been in CDSH custody for the past 16 years, since December 23, 1997.  He initially was housed at Atascadero and was subsequently transferred to Coalinga on October 10, 2006, where he has remained for the past seven years.  Representative Plaintiff Herman is one of the original representative plaintiffs in this class action.

21.     Prior to his civil commitment, Representative Plaintiff Herman served a 15-year sentence from convictions in May 1991.  Shortly before his scheduled parole release in December 1997, the Orange County District Attorney's Office initiated civil commitment proceedings against Representative Plaintiff Herman based on evaluations from two CDSH psychiatrists indicating that he met the definition of an SVP.[3]

22.     Representative Plaintiff Herman waived his initial probable cause hearing and should have had a trial in June 1998, when the Orange County Superior Court found sufficient probable cause for a trial to commence.  However, in part because his court-appointed counsel was not ready, Representative Plaintiff Herman's case "languished" for three years before trial.  *See People v. Herman*, No. G030109, 2004 WL 902201, at *1 (Cal. Ct. App. 2004).

---

[3] One of the psychiatrists belatedly retracted the diagnosis after reevaluating Representative Plaintiff Herman in 2000 and, instead, concluded that he no longer met the SVP threshold and would not likely reoffend upon release.

9.

*THIRD AMENDED COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR. · SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 · FACSIMILE 310-826-4711

23.     In October 2001, while waiting for trial, Representative Plaintiff Herman expressly objected to the pretrial delay by raising a constitutional speedy trial challenge in a motion to dismiss the petition.  The Superior Court denied Representative Plaintiff Herman's motion to dismiss.

24.     At his November 26, 2001 trial, Representative Plaintiff Herman was found to have met the definition of an SVP and was committed to a two-year term.  In April 2004, the California Court of Appeal denied Representative Plaintiff Herman's appeal, including his claim of ineffective assistance of counsel.

25.     Representative Plaintiff Herman's initial commitment trial in 2001 was his last.  He has not had a recommitment trial or any other judicial determination since 2001 as to whether he meets the definition of an SVP, even after the passage of Jessica's Law in 2006.  Representative Plaintiff Herman's two-year commitment expired in 2003, and without a trial recommitting him indefinitely pursuant to Jessica's Law, he remains in legal limbo and his confinement is devoid of any apparent legal authorization.

26.     Since his initial commitment trial in 2001, Representative Plaintiff Herman has been represented by a court-appointed attorney who, for the past decade, has neglected any basic preparation for trial, including obtaining a defense evaluator.  The attorney would sometimes mail or fax a waiver form for Representative Plaintiff Herman to sign without further instruction. Representative Plaintiff Herman otherwise rarely interacts with his attorney and has not met him for over one and one-half years as of the filing of this TAC.  In 2011, the attorney representing Representative Plaintiff Harmon was disciplined and temporarily suspended by the California State Bar in an unrelated matter.

### *Larry Harvey* **(Subclass I Representative)**

27.     Representative Plaintiff Larry Harvey is a civil pretrial detainee confined in Coalinga under the SVP Act.  Defendants have violated and continue

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

10.

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

to violate Representative Plaintiff Harvey's constitutional rights to a speedy initial commitment trial.

28.　　Representative Plaintiff Harvey is 55 years old and has been in CDSH custody for four years, since his arrival in Coalinga on March 11, 2009.

29.　　Representative Plaintiff Harvey is illiterate and suffers from Hepatitis C, which requires regular injections of interferon. He has not been medically cleared to go to trial because the San Bernardino County Superior Court does not provide such medical treatment, which resulted in inexcusable trial delay.

30.　　Representative Plaintiff Harvey also has had three court-appointed attorneys in four years, which resulted in additional inexcusable trial delay. The first two attorneys instructed Representative Plaintiff Harvey to sign a waiver form, which he did. Representative Plaintiff Harvey's current attorney has been pressuring him to sign another waiver, in spite of Representative Plaintiff Harvey's refusal to do so. Because of the above, Representative Plaintiff Harvey's speedy trial rights have been violated.

31.　　Representative Plaintiff Harvey wishes to have his initial commitment trial to determine whether he meets the definition of an SVP.

### *David Green* (Subclass I and Subclass II Representative)

32.　　Representative Plaintiff David Green is a civil pretrial detainee confined in Coalinga under the SVP Act. Defendants have violated and continue to violate Representative Plaintiff Green's constitutional rights to a speedy initial commitment trial, as well as his due process rights to adequate medical treatment.

33.　　Representative Plaintiff Green is 43 years old and has been in CDSH custody for four years, since his arrival in Coalinga on April 16, 2009.

*THIRD AMENDED COMPLAINT*

34.     Representative Plaintiff Green has yet to have an initial commitment trial to determine whether he meets the definition of an SVP, even after he discharged his court-appointed attorney and obtained private counsel.

35.     In early 2013, Representative Plaintiff Green was diagnosed with Hepatitis C.  Because Coalinga does not have an infectious disease specialist on staff despite a large number of Plaintiffs who suffer from infectious diseases, Representative Plaintiff Green was placed on a waiting list to see an outside specialist.  As of the filing of this TAC, Representative Plaintiff Green has yet to be treated by any outside specialist.  Representative Plaintiff Green has resorted to relying on monthly blood tests to monitor his Hepatitis C viral load.  The ongoing medical delay occurred despite Representative Plaintiff Green's position as the Health and Safety Advisor in the Civil Detainees' Advisory Council ("Council"), which puts him in charge of identifying and presenting medical and safety concerns to the Coalinga administration.

### *Terry Leake* **(Subclass II Representative)**

36.     Representative Plaintiff Terry Leake is a civil detainee confined in Coalinga under the SVP Act.  Defendants have violated and continue to violate Representative Plaintiff Leake's federal due process and pendent state law rights by forcibly medicating him in nonemergency situations without complying with established procedural safeguards.

37.     Representative Plaintiff Leake is 51 years old and has been in CDSH custody for 15 years, since December 14, 1998.  He initially was housed at Atascadero and was subsequently transferred to Coalinga on September 14, 2006, where he has remained for the past seven years.  Before his civil commitment, Representative Plaintiff Leake had completed a 14-year sentence following convictions in 1992.

38.     In August 2013, Coalinga medical staff forcibly medicated Representative Plaintiff Leake with anti-psychotropic medication against his will

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

12.

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

in a nonemergency situation, without complying with constitutional or statutory safeguards.  Medical staff at Coalinga have previously involuntarily medicated Representative Plaintiff Leake in purportedly emergency situations.

39.     In particular, on August 15, 2013, without any prior notice, Representative Plaintiff Leake was escorted to his involuntary medication hearing.  Representative Plaintiff Leake arrived to find that the hearing had begun and that his treating psychiatrist – who initiated the involuntary medication proceedings – was already testifying in front of the hearing panel. When Representative Plaintiff Leake protested, he was belatedly given a notice of hearing by Debra Johnson, his assigned lay advisor.  The notice was dated August 15, 2013, and was not signed by the treating psychiatrist.  The hearing was subsequently adjourned.  Daniel Wagoner, a Patients' Rights Advocate from CDSH, was present at the hearing and observed Coalinga staff's illegal actions.

40.     On the next day, August 16, 2013, Representative Plaintiff Leake was brought before the same panel to complete the hearing, despite the defective notice from the previous day.  At the hearing, Debra Johnson again belatedly served him a written notice, which was dated August 16, 2013.

41.     During the hearing, the panel limited Representative Plaintiff Leake to only one witness, but did not impose the same evidentiary limitations on Coalinga.  Representative Plaintiff Leak was not allowed to cross-examine any of Coalinga's witnesses, and none of the staff members he requested to appear on his behalf did so because they had not been notified of his desire that they be present.

42.     The panel found that Coalinga had sufficiently proved the necessity to involuntarily inject Representative Plaintiff Leake with anti-psychotropic medication.  Representative Plaintiff Leake has been receiving those injections three times a day ever since the panel's decision.

13.

*THIRD AMENDED COMPLAINT*

### _Michael St. Martin_ (Subclass II Representative)

43.     Representative Plaintiff Michael St. Martin is a civil detainee confined in Coalinga under the SVP Act.  Defendants have violated and continue to violate Representative Plaintiff St. Martin's First Amendment right not to have his refusal to participate in the SOTP used against him at recommitment proceedings to prolong his detention, as well as his due process rights to constitutionally adequate medical care.

44.     Representative Plaintiff St. Martin is 56 years old and has been in CDSH custody for a total of nine years, since March 29, 2004.  Representative Plaintiff St. Martin initially was housed at Atascadero and was subsequently transferred to Coalinga on September 26, 2006, where he has remained for the past seven years.  Prior to his civil commitment in 2004, Representative Plaintiff St. Martin had served approximately 13 years in state prison.

45.     Representative Plaintiff St. Martin has never participated in the SOTP at Coalinga, a fact that is prominently and repeatedly featured in his CDSH case history file.  In fact, every quarterly and annual review focuses on Representative St. Martin's refusal to participate in treatment, as well as his failure to complete other workshops and group programs.  Moreover, Representative Plaintiff St. Martin's 2013 Treatment Plan identifies his refusal to participate in treatment as a "barrier to discharge."

46.     Representative Plaintiff St. Martin's CDSH case history file confirms Defendants' policy and practice of equating Plaintiffs' refusal to participate in the SOTP as a "barrier to discharge," such that Plaintiffs who refuse treatment for whatever reason have no chance of being released.

47.     Because of Representative Plaintiff St. Martin's leadership position among Plaintiffs, Defendant Azizian and other doctors in Coalinga have promised him a "fast track" through the SOTP if he agrees to participate.  Representative Plaintiff St. Martin has repeatedly declined any such offer.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

14.

48.     In 2009, Representative Plaintiff St. Martin visited an outside dermatologist to treat abnormal skin growths on his hand.  The dermatologist ordered punch biopsies to allow further testing of the tissue sample.  As of the filing of this TAC, Representative Plaintiff St. Martin is still waiting for the biopsies and has received no treatment for the abnormal skin growth.

### *Michael Seaton* **(Subclass II Representative)**

49.     Representative Plaintiff Michael Seaton is a civil pretrial detainee confined in Coalinga under the SVP Act.   Defendants have violated and continue to violate Representative Plaintiff Seaton's due process rights to non-punitive conditions of confinement

50.     Representative Plaintiff Seaton is 60 years old and has been in CDSH custody for approximately 16 years, since 2002.  Representative Plaintiff Seaton initially was housed at Atascadero and was subsequently transferred to Coalinga in September 2005, where he has remained for the past eight years.

51.     Prior to his civil commitment, Representative Plaintiff Seaton served approximately 16 years in state prison pursuant to his convictions in 1986. Altogether, Representative Plaintiff Seaton has been continuously held in state custody for 27 years.

52.     Since moving to Coalinga in 2005, Representative Plaintiff Seaton has suffered chronic sleep deprivation because of Defendants' public address system ["PA system"], which broadcast loud messages almost every day and night inside all units.

**B.     Defendants**

53.     When applicable, Plaintiffs have substituted official-capacity Defendants for their successors pursuant to Federal Rule of Civil Procedure 25(d), which allows for the automatic substitution of a defendant when a public officer is sued in an official capacity and dies, resigns, or otherwise ceases to hold office during the pendency of the action.  Defendants are employees of the

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR. · SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 · FACSIMILE 310-826-4711

15.

State of California and are clothed with the authority of state law and act under color of state law, that is, under color of the Constitution, statutes, laws, rules, regulations, and customs of the State of California at all times relevant to this suit.

### *Edmond G. Brown, Jr.* (official capacity)

54.     Defendant Edmond G. Brown, Jr. is the Governor of California and the Chief Executive of the state government.  As Governor, he is obligated under state law to supervise the official conduct of all executive and ministerial officers and to ensure the lawful performance of their duties.  Defendant Brown has control over the monies allocated to the CDCR and CDSH by submitting the annual budget of the State and by exercising his authority to veto or sign legislation appropriating funds.  Defendant Brown has the authority to appoint and remove all subordinate Defendants below.  Defendant Brown retains the ultimate authority over the care and treatment of the Plaintiff Class.

### *Jeffrey Beard* (official capacity)

55.     Defendant Jeffrey Beard is the Secretary of the CDCR.  The CDCR is responsible for operating the state prison system and all its facilities, including those housing SVP detainees.  Pursuant to the SVP Act, the CDCR is in charge of initiating the SVP commitment process by referring potential SVPs near the end of their scheduled release to the CDSH for evaluation.

### *Cliff Allenby* (official capacity)

56.     Defendant Cliff Allenby is the Acting Director of the CDSH. Pursuant to the SVP Act, the CDSH has direct custody of all SVP detainees and is responsible for operating the state hospitals, including Coalinga, where most of the SVP detainees are confined.  The CDSH is responsible for providing constitutionally adequate conditions of confinement and medical and dental care at the state hospitals.  The CDSH implements the programs and treatment regime

16.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

used by the state hospitals.  The CDSH is in charge of evaluating SVP detainees
before their civil commitment and recommitment proceedings.

### *Audrey King* **(official and individual capacities)**

57.     Defendant Audrey King is the Executive Director of Coalinga, the
statutorily designated facility for all SVP detainees.  As the Executive Director of
Coalinga, Defendant King is responsible for the overall development,
organization, management, and operation of Coalinga.  Defendant King is
responsible for caring for the safety and wellbeing of all Plaintiffs.  Defendant
King is part of Coalinga's Executive Team, which regularly meets with elected
representatives in Plaintiff's Council to address all conditions of confinement
issues and concerns in Coalinga.  Defendant King has knowledge of the
constitutional violations alleged in Claims Two through Five.

### *Brandon Price* **(individual capacity)**

58.     Defendant Brandon Price was at all relevant times the Hospital
Administrator of Coalinga.  Defendant Price is responsible for the planning,
organization, management, and operation of all administrative services and
functions in Coalinga.  Defendant Price oversees the Department of Police
Services and is responsible for maintaining security.  Defendant Price is part of
Coalinga's Executive Team, which regularly meets with elected representatives
in Plaintiff's Council to address all conditions of confinement issues and
concerns in Coalinga.  Defendant Price has knowledge of the constitutional
violations alleged in Claims Two through Five.

### *Susan Davey* **(individual capacity)**

59.     Defendant Susan Davey was at all relevant times the Hospital
Administrative "Resident II" of Coalinga.  Defendant Davey assists Defendant
Price in planning, organizing, and directing the administrative services and
programs at Coalinga.  Defendant Davey is in charge of obtaining and

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR. . SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

*THIRD AMENDED COMPLAINT*

maintaining all Coalinga's contracts with outside entities. Defendant Davey has knowledge of the constitutional violations alleged in Claims Two through Five.

**_Debra Brown_ (individual capacity)**

60.     Defendant Debra Brown was at all relevant times the Assistant Hospital Administrator at Coalinga. Defendant Brown assists Defendant Price in planning, organizing, and directing the administrative services and programs at Coalinga. Defendant Brown has knowledge of the constitutional violations alleged in Claims Two through Five.

**_Karen Reed_ (individual capacity)**

61.     Defendant Karen Reed was at all relevant times the Acting Clinical Administrator at Coalinga. Defendant Reed plans, organizes, directs, and evaluates the treatment programs and clinical functions at Coalinga. Defendant Reed is responsible for the administration, implementation, and oversight of the clinical operations at Coalinga. Defendant Reed ensures that all clinical service programs and departments complied with established CDSH policies and procedures. Defendant Reed is part of Coalinga's Executive Team, which regularly meets with elected representatives in Plaintiff's Council to address all conditions of confinement issues and concerns in Coalinga. Defendant Reed has knowledge of the constitutional violations alleged in Claims Two through Five.

**_Cynthia Trevino_ (individual capacity)**

62.     Defendant Cynthia Trevino was at all relevant times the Assistant Clinical Administrator at Coalinga. Defendant Trevino assists Defendant Reed in planning, organizing, and directing the clinical services and programs at Coalinga. Defendant Trevino has knowledge of the constitutional violations alleged in Claims Two through Five.

**_John Catano_ (individual capacity)**

63.     Defendant John Catano was at all relevant times the Acting Chief of Central Program Services at Coalinga. Defendant Catano plans, organizes, and

18.

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

directs the centralized programs at Coalinga to provide services not available in regular treatment programs. Defendant Catano has knowledge of the constitutional violations alleged in Claims Two through Five.

### *Linda Clark* **(individual capacity)**

64. Defendant Linda Clark was at all relevant times the Assistant Chief of Central Program Services at Coalinga. Defendant Clark assists Defendant Catano in planning, organizing, and directing the central programs at Coalinga. Defendant Clark has knowledge of the constitutional violations alleged in Claims Two through Five.

### *Alan Carlson* **(individual capacity)**

65. Defendant Alan Carlson was at all relevant times the Assistant Chief of Central Program Services at Coalinga. Defendant Carlson assists Defendant Catano in planning, organizing, and directing the central programs at Coalinga. Defendant Carlson has knowledge of the constitutional violations alleged in Claims Two through Five.

### *Dr. Robert Withrow* **(individual capacity)**

66. Defendant Dr. Robert Withrow was at all relevant times the Medical Director at Coalinga. Defendant Withrow plans, organizes, and directs the clinical treatment programs at Coalinga. Defendant Withrow is responsible for implementing relevant federal and state law and regulations, as well as departmental treatment policies. Defendant Withrow ensures that treatment services are developed with explicit goals and objectives. Defendant Withrow assists Defendant King in formulating Coalinga's overall policy. Defendant Withrow is part of Coalinga's Executive Team, which regularly meets with elected representatives in Plaintiff's Council to address all conditions of confinement issues and concerns in Coalinga. Defendant Withrow has knowledge of the constitutional violations alleged in Claims Two through Five.

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

19.

### _Dr. Alan Azizian_ **(individual capacity)**

67.     Defendant Dr. Alan Azizian was at all relevant times the Chief Psychologist at Coalinga.  Defendant Azizian is responsible for the planning, policy development, supervision, and implementation of Plaintiffs' clinical processes.  Defendant Azizian oversees Plaintiffs' clinical screenings and evaluations.  Defendant Azizian directs and supervises Coalinga staff and contract evaluators in all matters concerning Plaintiffs' clinical screenings and evaluations.  Defendant Azizian provides the final review of evaluations completed by state and contract evaluators.  Defendant Azizian has knowledge of the constitutional violations alleged in Claims Two through Five.

### _Dr. Jerry Kasdorf_ **(individual capacity)**

68.     Defendant Dr. Jerry Kasdorf was at all relevant times the head of the Program Development and Curriculum Committee at Coalinga.  Defendant Kasdorf oversaw the SOTP's transition from the former "Phase Treatment" model to the "Good Lives and Self-Regulation" model.  Defendant Azizian has knowledge of the constitutional violations alleged in Claim Two.

## V.

## CLASS ACTION ALLEGATIONS

**A.**     **Class Definition**

69.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of themselves and on behalf of a class of persons consisting of two subclasses:  Subclass I and Subclass II.

_THIRD AMENDED COMPLAINT_

70.   **Subclass I Plaintiffs (Alleging Unconstitutional Trial Delay in the First Cause of Action):**   Pursuant to Federal Rule of Civil Procedure 23, the Subclass I Plaintiffs bring this action for themselves and on behalf of a class of civil detainees who are now, or will be in the future, detained under the custody of the CDSH pursuant to the SVP Act and suffer from the injuries alleged in the First Claim below as of September 2, 1997 (the date specified in the Court's Stipulation and Order Granting Class Certification filed on April 13, 2001), regardless of their stage in the commitment process or the location of the facility where they are detained.

71.   **Subclass II Plaintiffs (Alleging Unconstitutional Conditions of Confinement in the Second through Fifth Causes of Action):**   Pursuant to Federal Rule of Civil Procedure 23, the Subclass II Plaintiffs bring this action for themselves and on behalf of a class of civil detainees who are now, or will be in the future, detained at Coalinga under the custody of the CDSH pursuant to the SVP Act and suffer from the injuries alleged in the Second, Third, Fourth, and Fifth Claims below, regardless of their stage in the commitment process.

**B.**   **Rule 23(b)(1) & (2) Requirements**

72.   The Subclass I and Subclass II Plaintiffs request that each subclass be certified pursuant to either Federal Rule of Civil Procedure 23(b)(1) or Federal Rule of Civil Procedure 23(b)(2), or both Federal Rule of Civil Procedure 23(b)(1) and (b)(2).

73.   Each subclass is maintainable under both Federal Rule of Civil Procedure 23(b)(1) and (b)(2) because:

a.   The prosecution of separate actions by individual members of the subclasses would create a risk of inconsistent and varying adjudication, which would establish incompatible standards of conduct for Defendants. Likewise, the prosecution of separate actions by individual members of the subclasses would create a risk of adjudications with respect to individual

21.

*THIRD AMENDED COMPLAINT*

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

members which would substantially impair the ability of other members to protect their interests.

b.     Defendants have refused to act on grounds generally applicable to each subclass, making injunctive and declaratory relief appropriate for each subclass.  Defendants have created and will create, implement, and enforce policies, practices, and customs applicable to all members of each subclass.  Similarly, Defendants have failed and will fail to create, implement, and enforce appropriate policies, practices, and customs applicable to all members of each subclass, as described more fully below.

**C.     Rule 23(a) Prerequisites**

74.     Each subclass satisfies the prerequisites of Rule 23(a):

a.     **Numerosity**: The size of each subclass is so numerous that joinder of all members of the subclass is impracticable:

i.     **Subclass I**:  While the exact number of Subclass I members is presently unknown, Subclass I represents approximately 900 civil detainees at Coalinga and an unknown number of detainees in other state hospitals and facilities who have been committed pursuant to the SVP Act.

ii.     **Subclass II**:  Subclass II represents approximately 900 civil detainees at Coalinga who have been committed pursuant to the SVP Act.

b.     **Commonality**: Common questions of law and fact exist as to Plaintiffs in both Subclass I and Subclass II.  The members of Subclass I and the members of Subclass II each suffered the same type of constitutional deprivations as the other members in the respective subclasses, and the issues within each subclass are capable of class-wide

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700/ FACSIMILE 310-826-4711

22.

resolution.  The common questions within each subclass include but are
not limited to the following:

      i.    **Subclass I** (Claim One):  Common questions in **Claim
One** include:

      a.    the delays in civil commitment and
recommitment proceedings under the SVP Act caused by
overcrowded dockets in state courts and budget concerns in
the District Attorney's Office and Public Defender's Office;

      b.    the lack of a speedy trial provision in the SVP
Act;

      c.    court-appointed defense attorneys' failure to
obtain voluntary and knowing trial waivers from Plaintiffs;
and

      d.    state courts' refusal to recognize a constitutional
right for a civil detainee to represent himself.

      ii.    **Subclass II** (Claims Two through Five):  Common
questions in **Claim Two** include:

      a.    policies and practices regarding the evaluation
and treatment of Plaintiffs under the SOTP;

      b.    the use of admissions made by Plaintiffs during
treatment sessions against them in subsequent court
proceedings;

      c.    the use of Plaintiffs' refusal to make
incriminating admissions or participate in treatment against
them in subsequent court proceedings;

      d.    the documentation of Plaintiffs' treatment
admissions in their case files; and

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

*THIRD AMENDED COMPLAINT*

e.      the documentation of Plaintiffs' refusal to make incriminating admissions or participate in treatment in their case files.

Common questions in **Claim Three** include:

a.      policies and practices regarding in-house administrative hearings on involuntary medication;

b.      failure to provide adequate notice or a disinterested lay advisor to Plaintiffs before administrative hearings; and

c.      failure to allow Plaintiffs to present evidence and cross-examine Coalinga's witnesses in administrative hearings.

Common questions in **Claim Four** include:

a.      policies and practices regarding conditions of confinement;

b.      policies and practices regarding the PA system; and

c.      policies and practices regarding safety measures to prevent sexual abuse and rapes among Plaintiffs.

Common questions in **Claim Five** include:

a.      policies and practices regarding provision of medical and dental care;

b.      delays in visiting primary care doctors and outside specialists; and

c.      the need for annual screening for valley fever.

c.      <u>**Typicality**</u>: The Claims of Representative Plaintiffs in Subclass I and Subclass II are typical of the claims of all members of each subclass because all members of each subclass, respectively, will be

24.

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700 Facsimile 310-826-4711

detrimentally affected by Defendants' policies, practices, and customs as complained of herein.

d.  **Adequacy of Representation**:  Representative Plaintiffs of each subclass have been and will continue to fairly and adequately protect the interests of the subclass members.  Representative Plaintiffs have no interests that are antagonistic to the interest of the subclasses and Representative Plaintiffs are represented by competent and experienced counsel familiar with federal constitutional law.

## VI.

## GENERAL ALLEGATIONS

**A.**  **Trial Delay**

75.  As of the filing of this TAC, a large number of Plaintiffs have yet to receive their initial commitment or subsequent recommitment trials, some after shockingly long delays.  In Coalinga alone, approximately 342 Plaintiffs, including Representative Plaintiffs Green, Harvey, and Seaton, have not had their initial commitment trials to determine whether they meet the definition of an SVP.

76.  Examples of Plaintiffs who have experienced excessive delays in receiving their initial commitment or recommitment trials include the following:

a.  Plaintiff Niles Carr is a civil pretrial detainee currently housed in Coalinga.  Plaintiff Carr came under CDSH custody in 1997 and has been waiting for more than 16 years for his initial commitment trial in the Los Angeles County Superior Court.

b.  Plaintiff Karl Coleman is a civil pretrial detainee currently housed in Coalinga.  Plaintiff Coleman has been waiting for his initial commitment trial in the Alameda County Superior Court since the Superior Court found probable cause for trial in August 2000.

*THIRD AMENDED COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700: FACSIMILE 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

c.    Plaintiff Richard Kindred is a civil detainee currently housed in Coalinga.  Plaintiff Kindred entered CDSH custody in 2001, and belatedly received his initial commitment trial 12 years later, in March 2013.

d.    Plaintiff Michael Hawkins is a civil detainee currently housed in Coalinga.  Plaintiff Hawkins, whose recommitment petition was filed in 2003, waited until October 2009 for his recommitment trial in the Riverside County Superior Court.

e.    Plaintiff Timothy Seeboth is a civil detainee currently housed in Coalinga.  Plaintiff Seeboth waited five years, from 2005 to 2010, to have his recommitment trial in the Sacramento County Superior Court. The five-year delay occurred even though Plaintiff Seeboth's previous two-year commitment term had expired in 2007, and in spite of his 2008 filing of a state habeas petition challenging the denial of his constitutional rights to a speedy trial.

77.    Some Plaintiffs, like Representative Plaintiff Herman, have not had a recommitment trial after the passage of Jessica's Law in 2006, meaning that the CDSH continues to detain them even after the expiration of their two-year commitment term.

78.    The widespread trial delays are outside Plaintiffs' control and are directly attributable to the State, which bears the ultimate responsibility for bringing Plaintiffs to trial.

79.    Unlike other civil commitment statutes in California, the SVP Act does not provide an express timeframe for a trial to commence.[4]  In other words, after the filing of the SVP commitment or recommitment petition, no statutory

---

[4] *Cf.* Cal. Penal Code § 1026.5(b)(4) (court must hold trial on petition to extend commitment of those who have been found not guilty by reason of insanity ("NGI") 30 days before expiration of commitment term); *id.* § 2972(a) (same for mentally disturbed offenders ("MDO")).

26.

*THIRD AMENDED COMPLAINT*

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700  FACSIMILE 310-826-4711

safeguards exist to ensure that detainees receive a judicial determination of their SVP status.

80.     In 1998, the California Department of State Mandates agreed to reimburse counties for eight specific activities associated with implementing the SVP Act, including the prosecution and defense of SVP petitions, and the retention of experts and other professionals in preparation for trial.  The reimbursement process for mandates, however, is slow and burdensome, in that years of budget shortfalls in California created a backlog of unpaid mandates. For instance, the State deferred $800 million in unpaid mandates in the 2003 fiscal year.  By the 2005 fiscal year, the State owed counties a total of $1.5 billion in unpaid mandates.  In the fiscal year of 2013, the State owed $1.6 billion in unpaid non-education mandates alone and still owed approximately $27 million in unpaid SVP-related mandates from before fiscal year 2004, which a voter initiate in 2004 allowed the State to repay over a 15-year period.

81.     As a result of the lack of a statutory timeline for trial and funding restraints, District Attorney's Offices have little legal or financial incentive to promptly bring Plaintiffs to trial.

82.     SVP proceedings are deemed to be a low priority on the state court dockets, and Plaintiffs face automatic year-long delays in the superior courts of certain counties.  The most egregious instances are the superior courts of Los Angeles, Sacramento, Santa Barbara, San Bernardino, San Luis Obispo, and Ventura Counties, in which SVP commitment and recommitment trials have been held so infrequently that they have effectively ceased.

83.     For example:

a.     The Los Angeles County Superior Court has a Mental Health Department – consisting of Departments 95, 95A, and 95B – to hold hearings and trials involving individuals with severe emotional problems, narcotic addictions, developmental disabilities, and mental retardation.

*THIRD AMENDED COMPLAINT*

However, the Mental Health Department no longer holds SVP trials, even though it still holds MDO commitment proceedings.

      b.     In the San Bernardino County Superior Court, out of a total of nine divisions and 67 judges, only one judge handles SVP trials.  The same judge is also the only judge responsible for handling MDO and NGI hearings.

84.     The same overcrowding and budget concerns are even more pronounced in the Public Defender's Offices and directly impacts panels of court-appointed attorneys.  One Orange County attorney, who was appointed to represent approximately 20 Plaintiffs, has not brought any of their cases to trial.

85.     As a result, the list of Plaintiffs represented by unprepared and frequently replaced attorneys is long:

      a.     Representative Plaintiff Harvey is on his third attorney in four years while waiting for his initial commitment trial.  None of the attorneys have prepared for trial and instead have instructed or pressured Representative Plaintiff Harvey to continuously waive his right to a speedy trial.

      b.     Plaintiff Ernest Stokes and Plaintiff Carr are civil detainees currently housed in Coalinga.  Both Plaintiffs Stokes and Carr had to postpone their trials because their appointed attorneys were busy with other criminal cases.

      c.     Plaintiff James Hill is a civil detainee currently housed in Coalinga.  Plaintiff Hill's attorney has put off trying Plaintiff Hill's case for years.

      d.     Plaintiff Jon Golden is a civil detainee currently housed in Coalinga.  Plaintiff Golden had five appointed attorneys in a short period time, all of whom refused to go forward with trial as requested by Plaintiff Golden.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

28.

e.      Plaintiff Michael Languein is a civil detainee currently housed in Coalinga.  Plaintiff Languein had three attorney who had at various times rebuffed his request for trial, telling him that it was not a good time to do so.

f.      Plaintiffs Phillip Martinez and Jose DeLeon are civil detainees currently housed in Coalinga.  Plaintiffs Martinez and DeLeon are forced to keep postponing trial because their attorneys are frequently replaced near the trial dates.

86.     Compounding the problem, California courts have refused to recognize the constitutional right for a civil detainee to represent himself in civil commitment proceedings, even though some courts have implicitly recognized a limited statutory right to do so.

87.     Thus, Plaintiffs are stuck in a "Catch-22" in which they are represented by mostly unprepared and temporarily assigned attorneys who have contributed and continue to contribute to the delays, but Plaintiffs have no recourse to receive a speedy trial because their right to discharge counsel and represent themselves is limited.

88.     To the extent some Plaintiffs have agreed to sign waivers postponing trial, these waivers have not been knowingly or voluntarily made.

89.     Until 2008, when the Court of Appeal dismissed in *People v. Litmon*, 162 Cal. App. 4th 383 (2008), a commitment petition based on the State's violation of an SVP detainee's constitutional right to a speedy trial, defense attorneys handling SVP cases have generally dispensed with obtaining Plaintiffs' consent in seeking continuances.  As a result, many Plaintiffs had sporadically signed trial waivers before 2008, even though their trial delays spanned many years.  Many more Plaintiffs were simply kept in the dark about their civil commitment proceedings.  Thus, the trial delays before 2008 are not attributable to Plaintiffs.

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700: FACSIMILE 310-826-4711

29.

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

90.     After 2008, the prevailing practice for defense attorneys became annually mailing or faxing waiver forms to Plaintiffs for them to sign.  Those waivers are neither voluntary nor knowing.  Almost half of the Plaintiffs in Coalinga are illiterate.  Many more have not had any contact with their court-appointed attorneys except for receiving the annual waiver form to sign.  Some, like Representative Plaintiff Harvey, have been pressured by their attorneys to sign waiver forms even when they have refused to sign them.  For instance, Plaintiff Dennis Sharkey claimed that his attorney refused to prevent trial delays against Plaintiff Sharkey's express wishes.

91.     In sum, the State is ultimately responsible for all trial delays caused by systemic problems created by understaffed prosecutor's and public defender's offices and chronically congested state court dockets, which are directly caused by the State's reluctance to dedicate resources to promptly adjudicate Plaintiffs' due process rights.

92.     Plaintiffs are prejudiced by the delays because they have suffered lengthy and oppressive detention during the inexcusable periods of delay, with the attendant anxiety and trauma of being confined in a state mental hospital during the periods of delay.  Any delay is particularly unjustified for Plaintiffs who have not had a judicial determination of their SVP status, and those whose two-year commitment terms expired and have not had a recommitment trial after 2006 to reclassify their commitment to indefinite confinement.  Any delay as to those Plaintiffs constitutes a blatant due process violation and creates a significant and irreversible risk of the erroneous deprivation of their liberty interest, particularly if they are subsequently found not to meet the definition of an SVP.

**B.     The SOTP**

93.     Until 2011, Defendants' SOTP utilized a "Phase Treatment" model, which focused on helping Plaintiffs control their deviant sexual urges and

*THIRD AMENDED COMPLAINT*

1   desires, with the ultimate goal of progressing Plaintiffs to the final phase of

2   court-approved conditional release.

3       94.    The "Phase Treatment" model required Plaintiffs to complete each

4   phase of treatment to the satisfaction of the treatment staff before advancing to

5   the next phase.  For instance, Phase I consists of informational sessions designed

6   to educate Plaintiffs about treatment objectives.  In order to progress to Phase II,

7   Plaintiffs had to acknowledge past sexual offenses, agree to openly discuss their

8   sexual history, and sign a written contract admitting that they have a mental

9   disorder and need treatment.  In Phases II through IV, Plaintiffs attended group

10  therapy sessions and learned the concepts of relapse prevention and dynamic risk

11  factors.  Plaintiffs were encouraged to provide written reports identifying their

12  deviant sexual desires and high-risk situations in which they would likely

13  reoffend.  Plaintiffs were expected to reveal enough about their sexual history for

14  the treatment staff to create a comprehensive list of their high-risk factors.

15  Plaintiffs' truthfulness was tested by polygraph examinations and penile

16  plethysmograph assessments.  To progress through Phases II, III, and IV,

17  Plaintiffs had to fully account for their past sexual offenses, accept lifetime

18  management, and learn to control their deviant sexual desires.  In order for a

19  Plaintiff to progress to Phase V, the treatment team, Coalinga's medical director,

20  and the Superior Court would all have to agree that he can be safely released into

21  the community with adequate supervision.

22      95.    In 2011, Defendants discontinued the "Phase Treatment" model and

23  revised the SOTP by partially incorporating components from the "Good Lives

24  and Self-Regulation" model, which focuses on Plaintiffs' strengths and self-

25  regulation skills, instead of relapse prevention.

26      96.    The "Good Lives and Self-Regulation" model has four phases:

27  "Treatment Readiness," "Self-Regulation and Building a Better Life," "Self-

28  Regulation Maintenance," and "Community Reintegration."  After 12 months of

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700  FACSIMILE 310-826-4711

31.

*THIRD AMENDED COMPLAINT*

participation in the program and before entering the "Self-Regulation Maintenance" phase, Plaintiffs receive progress ratings based on the treatment staff's assessment of Plaintiffs' understanding and acceptance of risk-related concepts, as well as their cooperation in the program, their sexual risk management, and their attitude. Polygraph examinations and penile plethysmograph assessments are still used to measure progress in the program. A review panel conducts quarterly evaluations of Plaintiffs' progress and identifies issues that impede or interfere with progress.

97.     To participate in the "Good Lives and Self-Regulation" model, Plaintiffs no longer have to sign a written contract and instead are encouraged to sign an optional informed consent form. In Coalinga's Spring 2013 newsletter, Defendants explained that the informed consent form signifies a "formal acknowledgment" of one's involvement in the SOTP. Plaintiffs ostensibly do not have to sign the informed consent form to participate in the SOTP. However, Coalinga's treatment staff has been instructed that, without a signed consent form, the staff must receive verbal acknowledgement from a participating Plaintiff that "he has been informed of the nature of the program and understands the contents and expectations for SOTP participants."

98.     Defendants' transition to the "Good Lives and Self-Regulation" model has not been seamless. Two years after the program began, Defendants still have not fully implemented the model, and many treatment groups and workshops lack a basic curriculum. In some instances, Defendants have relied on Plaintiffs to develop and teach their own treatment groups and workshops. For example, as part of the program, Plaintiff Norman Bell created a group called "Peer Mentoring and Leadership" in 2011 and has been teaching it since. Overall, any form of treatment under the "Good Lives and Self-Regulation" model is not sufficiently developed.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

32.

99.    Under either the "Phase Treatment" or "Good Lives and Self-Regulation" model, the SOTP has failed to treat Plaintiffs or facilitate their prospects for release, and instead the treatment program has been used by Defendants to collect evidence to justify Plaintiffs' continued detention.

100.    In 17 years since the enactment of the SVP Act in 1996, the SOTP has led to the ultimate release of 22 patients among hundreds of participants. Approximately half of those released have had their conditional release revoked based on minor, non-sexually related violations.

101.    In comparison, approximately 300 patients have been released through civil commitment proceedings, mostly by obtaining a judicial finding that they did not meet the definition of an SVP.  Only approximately 60 of those patients were participating in the SOTP at the time of their court-ordered release, and most had not progressed past the early stages of treatment.

102.    In addition to failing in its goal of providing treatment and preparing Plaintiffs for release, the SOTP has primarily served as an evidence collection mechanism for Defendants to prolong Plaintiffs' detention.

103.    The "Good Lives and Self-Regulation" model, once fully implemented, resembles the "Phase Treatment" model in most aspects.  Both models require participating Plaintiffs to admit that they have a mental disorder and need treatment.  While in treatment, Plaintiffs are required to reveal all past sexual misconduct in order to demonstrate progress.  Even though the "Good Lives and Self-Regulation" model no longer dismisses Plaintiffs who minimize or fail to take responsibility for their past crimes, it still identifies Plaintiffs' failure to accept responsibility as a "treatment target," meaning that all participating Plaintiffs ultimately have to take full responsibility in order to progress through the program.  Thus, Plaintiffs who refuse to admit that they have a mental disorder or reveal their past sexual misconduct are still barred from advancing through the SOTP.

*THIRD AMENDED COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

104.   The newly implemented informed consent form has not mitigated the Catch-22 dilemma.  The mandatory nature of the consent form remains unchanged: Plaintiffs must either sign or verbally acknowledge the informed consent form before participating in treatment.  Further, the form merely notifies Plaintiffs that Defendants will continue to use their words or refusal to speak those words against them.  Indeed, the form provides that "the patient's failure to participate or complete treatment may be considered evidence that the patient's condition has not changed" and that courts may "issue subpoenas ordering treatment providers to appear and testify in court, and disclose information pertaining to treatment records, including but not limited to assessments, interviews, and treatment progress notes."

105.   Under either model, Plaintiffs' admissions, treatment records, interviews, and progress notes are permanently documented in their case files.  In annual evaluations, Defendants' mental health evaluators rely on Plaintiffs' case files to determine whether they are likely to reoffend.  Coalinga's treatment staff and CDSH evaluators routinely testify against Plaintiffs in recommitment proceedings based on information obtained from Plaintiffs' case files.

106.   The case file of "Plaintiff A" is representative of a typical CDSH case history of a civil detainee in Coalinga:

> [Plaintiff A] has a diagnosis of PEDOPHILIA . . . .  He would benefit from learning and developing coping skills that would address his deviant arousal and cognitive distortions related to his attractions. [Treatment Plan Team] recommends such groups as: SOTP Treatment Readiness, Self-Management Skills for Sexual Arousal, Sexual Compulsivity Recovery Group, Breaking Barriers[,] and Thinking about your Thinking or other groups that address deviant sexual interactions.
>
> [Plaintiff A] declines Treatment Plan Team's recommendation to participate in SOTP.

107.   As a result, the stakes for participating in the revised SOTP remain high because both participation in the program and failure to participate in the

*THIRD AMENDED COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

program lengthen Plaintiffs' detention.  In particular, Plaintiffs' admissions during treatment sessions are used against them by evaluators and treatment staff during recommitment proceedings as evidence that they have a disorder and cannot be released.  Similarly, Plaintiffs' refusal to participate in the SOTP or to admit their past sexual misconduct are used as evidence that they have not progressed through the treatment program.  Notably, the SVP Act provides the following jury instruction for use at trials to establish an SVP detainee's dangerousness and propensity for sexually violent criminal behavior:

> The committed person's failure to participate in or complete the [programs] are facts that, if proved, may be considered as evidence that the committed person's condition has not changed.

Cal. Welf. & Inst. Code § 6605(d).

108.   Plaintiff Lance Purcell is a civil detainee currently housed in Coalinga.  Plaintiff Purcell's experience with the SOTP is common among many Plaintiffs.  Plaintiff Purcell voluntarily joined the SOTP in January 2002 when he was housed in Atascadero, believing that he might benefit from professional treatment.  The staff at Atascadero informed Plaintiff Purcell that everything he said in the SOTP would be confidential except for disclosure of previously unreported crimes.  Plaintiff Purcell participated in the SOTP for several years, including after his transfer to Coalinga in November 2005.  Plaintiff Purcell was "shock[ed]" when evaluators at his recommitment proceeding began revealing in open court conclusions and notes generated by Plaintiff Purcell's treatment therapist, including Plaintiff Purcell's test results, which his psychiatrist swore would be confidential.  The evaluators testified that based on Plaintiff Purcell's treatment admissions, he still suffered from pedophilia.  The Superior Court found that Plaintiff Purcell continued to meet the definition of an SVP.  Plaintiff Purcell's next two court proceedings produced the same result.  As of the filing of this TAC, Plaintiff Purcell refuses to participate in the SOTP.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

35.

109.   Defendants' treatment programs therefore punish Plaintiffs for exercising their First Amendment rights by using their words against them to secure their indefinite confinement, or by using their refusal to speak incriminating words against them to secure their indefinite confinement.

**C.     Forced Medication**

110.   As a matter of course, Defendants routinely administer involuntary anti-psychotropic medications to Plaintiffs in nonemergency situations without complying with constitutional and statutory safeguards.

111.   Before forcibly medicating a civil detainee with anti-psychotropic medication in a nonemergency context, due process under the Fourteenth Amendment requires that the State provide (1) advanced notice, (2) an opportunity to be heard, (3) assistance from an independent lay advisor, and (4) review by neutral medical professionals who have not been involved in the detainee's treatment or diagnosis.  *See Washington v. Harper*, 494 U.S. 210, 229-34, 110 S. Ct. 1028 (1990).

112.   Before forcibly medicating a civil detainee with anti-psychotropic medication in a nonemergency context, California law requires that the State provide (1) 24-hour written notice, (2) an interim administrative hearing preceding or concurrent with a court hearing, (3) assistance from an independent lay advisor, (4) an opportunity for the detainee to present evidence and cross-examine witnesses, (5) review by a panel of three neutral medical professionals who have not been involved in the detainee's treatment or diagnosis, and (6) a 14-day review hearing before the same panel with the same rights as above.  9 Cal. Code Reg. § 4210.

113.   Defendants primarily administer anti-psychotropic medications for convenience and to maintain order at Coalinga, rather than based on actual medical need.  To achieve that end, Defendants conduct "sham" in-house administrative hearings and select lay advisors mostly from behavior specialists

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700  Facsimile 310-826-4711

36.

in the forensics department who have close working relationships with both the medical professionals treating Plaintiffs and those serving on the hearing panel. Plaintiffs are seldom notified of the hearing in advance or receive assistance from their lay advisors, whose job is apparently limited to filling out the paperwork.

114.   The California Office of Patients' Rights has notified Coalinga and CDSH of many documented instances of Coalinga staff's noncompliance with requirements in forcibly medicating Plaintiffs, but similar problems continue to persist.

115.   For example:

a.   Plaintiff Clay Jones is a civil detainee currently housed in Coalinga.  In retaliation for Plaintiff Jones's filing of a complaint with the State Licensing and Certification Division, his Unit Supervisor wrongfully accused Plaintiff Jones of possessing "weapons," which in actuality were guitar repair tools, and convinced the Unit Psychiatrist to involuntarily medicate him based on that violation.  On February 22, 2012, Plaintiff Jones received notice that his administrative hearing would take place that same day.  Plaintiff Jones complained about the inadequate notice and did not attend the hearing.  The hearing nonetheless occurred outside Plaintiff Jones's presence and the hearing panel decided that he should be forcibly medicated.  The notice of administrative hearing and the hearing decision are both dated February 22, 2012.  Plaintiff Jones likewise did not receive notice of his 14-day review hearing, which took place on March 6, 2012.

b.   Plaintiff Greg Peters is a civil detainee currently housed in Coalinga.  On November 15, 2012, Plaintiff Peters attended his administrative hearing but received no assistance from his assigned lay advisor, Natasha Scott, who merely signed the hearing form.  The hearing panel did not allow Plaintiff Peters to call witnesses, present evidence, or

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

37.

cross-examine Coalinga's witnesses against him.  Plaintiff Peters has been involuntarily medicated ever since.

c.    Plaintiff James Wardlow is a civil detainee currently housed in Coalinga.  On November 15, 2012, Plaintiff Wardlow attended his 14-day review hearing and was served a notice of the hearing that same day by Natasha Scott.  The notice and hearing decision are both dated November 15, 2012.

d.    Plaintiff Francis McArthur is a civil detainee currently housed in Coalinga.  On May 23, 2013, Plaintiff McArthur was involuntarily medicated without a hearing.  He did, however, receive both the written notice and hearing decision that day; both documents were dated May 23, 2013.  Plaintiff McArthur, who suffers from mild mental retardation, has been involuntarily medicated ever since.

e.    Plaintiff Jeff Gambord is a civil detainee currently housed in Coalinga.  On June 11, 2013, Plaintiff Gambord had his 14-day review hearing before a different hearing panel without receiving advance notice. Debra Johnson, the assigned lay advisor, claimed to have given Plaintiff Gambord a written notice on June 10, 2013, even though the notice was signed and dated by the treating psychiatrist the next day, on June 11, 2013.  At the hearing, Plaintiff Gambord was not present during the treating psychiatrist's testimony and was not allowed to present evidence in his defense.  Plaintiff Gambord filed a complaint with the California Office of Patients' Rights.  On June 20, 2013, Daniel Wagoner, the Patients' Rights Advocate, confirmed those violations in a response to Plaintiff Gambord.

f.    Plaintiff John Avakoff is a civil detainee currently housed in Coalinga.  On July 17, 2013, Plaintiff Avakoff attended his 14-day review

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

38.

hearing and was belatedly served a notice of the hearing that day by Debra Johnson.

116.   The short list above is merely representative of constitutional and statutory violations occurring in Coalinga involving involuntary medication.  To evade constitutional and statutory safeguards, Defendants have routinely coerced Plaintiffs to consent to receiving anti-psychotropic injections by threatening that such injections can just as easily be forced upon them through the sham administrative proceedings described above.  Defendants have also routinely bypassed constitutional and statutory safeguards by falsely declaring a medical emergency in nonemergency situations.  A Coalinga psychiatric technician confirmed the illegal practice, stating that "we can do whatever we want by declaring it an emergency."

**D.**   **Punitive Conditions of Confinement**

117.   Plaintiffs are subject to punitive conditions of confinement in Coalinga at the risk of their health and safety.

**i.**   **Sleep deprivation**

118.   Since 2005, Coalinga has used a PA system for hospital-wide communication.  Every room inside Coalinga, including the patient units, contains a loudspeaker as part of the PA system.

119.   The PA system has loudly broadcast alarms and automated messages almost every day and every night.  At night, the PA broadcasts between one to three times, and sometimes as many as seven or eight times.  Each broadcast is repeated several times.

120.   The nightly PA broadcasts inside Plaintiffs' units have no legitimate purpose and have chronically deprived Plaintiffs of sleep and have adversely affected their physical and mental wellbeing.  In contrast, the PA system at Atascadero would broadcast only in the common halls and treating units, not inside Plaintiffs' sleeping quarters.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

39.

121.   Defendants have knowledge of Plaintiffs' sleep deprivation and related problems caused by the PA system, but have taken no actions to remedy the situation.  Notably, Plaintiffs have complained to the Coalinga administration for years to fix the PA system, and in June 2010, Coalinga approved the request to stop making PA announcements after 9:00 p.m., but has failed to implement that change.  Moreover, in March 2013, Defendants conceded in a separate civil rights action challenging Coalinga's PA system that blasting the PA system throughout the night deprived Plaintiffs of sleep and might have violated due process.  (*See* CM/ECF for U.S. Dist. Court for E. Dist. of Cal., Case No. 1:06-cv-01801-BLW-LMB, Doc. 140.)

ii.   **Rape**

122.   Coalinga has a long history of physical and sexual assaults among Plaintiffs, including sexual abuse and rapes among Plaintiffs who are housed in the same unit, which holds approximately 40 to 50 detainees at any given time. Representative Plaintiff St. Martin counted approximately 20 incidents of reported rapes since his arrival at Coalinga in September 2006.

123.   Defendants know about the ongoing sexual abuse and rapes among Plaintiffs, but have failed to properly segregate known offenders or protect Plaintiffs from harm.  Defendants' policy and custom is to remove the victim from his unit, not the rapist, which enables the rapist to continue to sexually abuse other Plaintiffs in the same unit.  Plaintiff Council members have suggested that Defendants remove the perpetrator from the unit instead, but Defendants have not implemented that change.  Defendants also routinely fail to keep the reporting victim's name confidential, resulting in further retaliatory assault on the victim by the aggressor.

124.   Defendants have a program review committee responsible for monitoring dangerous patients and providing prompt, 24-hour review of any

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

40.

complaint of sexual abuse or rape.  The committee has largely abdicated its responsibilities.

125.   Defendants have existing nursing procedures, administrative directives, and other regulations relating to rape prevention, but Defendants lack a clear, comprehensive plan that addresses all aspects of this serious issue. Plaintiffs have repeatedly informed Defendants, including Defendant King, of the need to emulate CDCR in terms of implementing policies on institutional rape elimination, requiring prompt responses from the Coalinga staff to reports of sexual abuse and rape, and improving treatment of the victims and maintaining their confidentiality.  Defendants have largely ignored Plaintiffs' pleas.

126.   One patient, LS, who is currently housed in Unit One, is extremely dangerous and has raped several Plaintiffs since his arrival at Coalinga in September 2007.  Despite numerous complaints to Coalinga staff by the victims and Plaintiff Council members, LS has remained unpunished.  In at least one instance, Coalinga staff leaked the reporting victim's name to LS, resulting in LS's retaliatory physical assault of the victim.  In another instance, a different victim informed Coalinga staff that LS was going to rape him.  The staff ignored the victim, who was subsequently raped by LS.

**E.** **Inadequate Medical and Dental Care**

127.   The constitutionally inadequate medical and dental care system at Coalinga has caused and continue to cause widespread harm to Plaintiffs, including inflicting severe and unnecessary pain, injuries, and deaths.

128.   Since 2005, at least 41 patients have died due to constitutionally inadequate medical treatment in Coalinga.  Three patient deaths resulted from Coalinga medical staff's refusal to administer emergency CPR or the Heimlich maneuver to those patients at their time of need.  Some examples of Defendants'

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

41.

failure to provide constitutionally adequate medical care are summarized as follows:

      a.     In March 2012, Patient One reported headaches, vertigo, and limb numbness to Coalinga medical staff.  Patient One continued to report his symptoms to Coalinga staff members for the next three months, but the staff members repeatedly ignored the complaints.  In June 2012, Patient One finally received a referral to an outside specialist and the specialist immediately determined that Patient One had an advanced brain tumor.  Patient One died of brain cancer soon thereafter.

      b.     On November 8, 2007, Patient Two went into cardiac arrest on the Coalinga basketball court.  The nurse on duty did not arrive for 15 to 20 minutes because the gym staff had failed to activate their personal alarms to summon help.  After the on-duty nurse arrived, the nurse refused to perform CPR on Patient Two, stating: "I am not putting my mouth on that man."  Patient Two died on the basketball court.

      c.     On August 15, 2011, Patient Three complained of chest pain and collapsed on the basketball floor.  The medical staff refused to perform CPR on Patient Three.  Another detainee tried to perform CPR on Patient Three but was unable to revive Patient Three.

      d.     Patient Four suffered repeated strokes at the end of his life, which left him bedridden and unable to control his bowel movement.  Coalinga staff refused to clean him and allowed him to lie in his own fecal matter for days.  Other detainees organized shifts to clean Patient Four until his death.

      e.     Patient Five is a civil detainee currently housed in Coalinga.  On August 19, 2010, Patient Five went to Coalinga's medication window to receive his diabetic injection.  Shortly after receiving the injection, Patient Five lost consciousness and fell to the floor.  When Patient Five

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700   FACSIMILE 310-826-4711

42.

woke up, he had trouble seeing and felt dizzy.  A Coalinga nurse informed Patient Five that the staff had given him the wrong diabetic injection. Patient Five was transported to a medical unit, and a doctor prescribed medication to help with his blood sugar.

f.      Patient Six is a civil detainee currently housed in Coalinga. Patient Six has a rare form of cancer in his right thigh.  He has previously complained about pain in his right thigh to Coalinga medical staff. However, Coalinga medical staff has always claimed that Patient Six had a pulled muscle.  In September 2013, Patient Six's unit doctor sent him to an outside medical appointment for a suspected hematoma in his right thigh. The emergency room doctor disagreed with the unit doctor's diagnosis of a hematoma and pursued further testing.  In October 2013, Patient Six was diagnosed with differentiated liposarcoma, with the tumor in his right thigh measuring over eight centimeters in width.

129.   Plaintiffs are only able to visit their unit primary care doctor three days each week, when the doctor is on duty.  Few primary care doctors provide medical treatment within the acceptable standard of care, and most primary doctors fall far short of the standard of care.  A primary care doctor who was in charge of two units and who was actually an anesthesiologist, unilaterally discontinued Plaintiffs' medications which had been prescribed by previous primary care doctors and outside specialists, without informing Plaintiffs.  The doctor discontinued kidney medications, aspirins, vitamin supplements, and pain medications, as well as wheelchairs and splints.  The doctor was recently fired for his actions only after repeated complaints by Plaintiffs to the Coalinga administration.

130.   Because of recent budget cuts, Coalinga currently has six specialists on staff, including a podiatrist, pain specialist, optometrist, two neurologists, and a physical therapist.

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

43.

131.   The average wait to see an outside specialist can last close to one year, which is far longer than the generally accepted professional standard of care.  Specifically, the average wait time to see an outside cardiologist is two weeks; the average wait time to see a dermatologist is six to 12 months; the average wait time to see an ENT is two weeks; the average wait time to see a neurologist is three months; and the average wait time to see an orthopedic surgeon is three months.

132.   Adding to the delay, CDCR officers, not CDSH staff, are in charge of transporting Plaintiffs to outside medical services.  Due to the ongoing overcrowding and shortage of staff in CDCR prisons, CDCR officers are frequently unavailable on Plaintiffs' scheduled medical trips.

133.   Coalinga does not have an infectious disease specialist on staff even though approximately 20 to 30 percent of Plaintiffs suffer from infectious diseases such as HIV/AIDS and Hepatitis C.  Coalinga does not have an oncologist on staff even though approximately 15 to 20 percent of Plaintiffs have some form of cancer, which is significantly higher than the national average.

134.   Coalinga has only one fulltime dentist and two part-time dentists on staff.  The fulltime dentist is also the head of Coalinga's Dental Department, and therefore has been constantly preoccupied with administrative duties.  The only dental hygienist on staff is frequently unavailable because she also works as the staff liaison officer.

135.   Unlike the emergency dental triage system utilized by CDCR prisons, Coalinga does not have emergency dental care.  After Plaintiffs complained about the lack of emergency dental care, Defendants had set up a triage system in the past but discontinued it after six months.

136.   In order for Plaintiffs to receive dental care, they must first visit their unit primary care doctor, which creates an initial delay of up to one week.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

44.

*THIRD AMENDED COMPLAINT*

If Plaintiffs need outside dental care, they have to wait approximately six months for their outside dental appointment.

**F.   Valley Fever**

137.   Defendants have repeatedly refused to provide annual screening for valley fever, a serious and potentially lethal fungal infection.  Defendants have in fact refused to even acknowledge that valley fever is an ongoing health issue at Coalinga, despite mounting evidence to the contrary.

138.   While the fungal infection is mostly asymptomatic in its initial stage, if the infection remains undiagnosed or untreated the infection can progress to chronic and then disseminated Coccidioidomycosis, resulting in a serious long-term illness and, in certain cases, death.

139.   Approximately one to five percent of those infected with valley fever fungus will develop disseminated Coccidioidomycosis, the most severe form of valley fever.  Disseminated Coccidioidomycosis is a progressive, painful, and debilitating disease that is uniformly fatal once the infection reaches the patient's brain membranes and causes meningitis.

140.   Epidemiological studies have established that immuno-compromised individuals and the elderly, *e.g.*, a large number of Plaintiffs at Coalinga, are at a much higher risk for developing chronic and disseminated Coccidioidomycosis.  In particular, HIV-positive individuals are known to develop severe pulmonary diseases after contracting valley fever.

141.   It is well known and undisputed that valley fever is endemic in the San Joaquin Valley where Coalinga is located.  In the past decade, prisons near Coalinga routinely have had one of the highest valley fever infection rates in the nation.  For instance, the Pleasant Valley State Prison, which is located less than one mile from Coalinga, and Avenal State Prison in nearby Avenal, had an infection rate of around 3,000 infected persons per 100,000.  In 2011, the Pleasant Valley State Prison and Avenal State Prison accounted for 535 of the

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700: FACSIMILE 310-826-4711

45.

640 reported cases of valley fever in all CDCR prisons.  Since 2007, approximately 40 inmates at the Pleasant Valley State Prison and Avenal State Prison have died as a result of contracting valley fever.

142.   In June 2013, the United States District Court for the Eastern District of California recognized that valley fever presents a serious health risk to inmates in the San Joaquin Valley and ordered the relocation of certain high risk inmate groups, totaling approximately 3200 inmates, from the Pleasant Valley State Prison and Avenal State Prison to other facilities.  *See Plata v. Brown*, No. C01-1351 TEH, 2013 WL 3200587 (E.D. Cal. June 24, 2013).

143.   Despite Plaintiffs' repeated requests, the latest in the form of a detailed risk-benefit analysis from Representative Plaintiff Green in June 2013, Coalinga does not provide annual testing for valley fever.  A Coalinga nurse issued a memorandum in April 2013, claiming that Coalinga's existing screening system for valley fever is satisfactory.

144.   Coalinga's current system to screen for valley fever relies on an annual self-identifying questionnaire for tuberculosis.  The questionnaire asks whether a Plaintiff has experienced any of the following eight symptoms within the past four weeks: (1) chronic cough for more than three weeks, (2) production of sputum, (3) blood-streaked sputum, (4) unexplained weight loss, (5) fever, (6) fatigue and tiredness, (7) night sweats, and (8) shortness of breath.  Because valley fever and tuberculosis share overlapping symptoms, Coalinga's policy dictates that if a Plaintiff self-diagnoses with more than three symptoms on the tuberculosis questionnaire, he will be tested for both valley fever and tuberculosis.

145.   Based on that method, only 15 out of approximately 900 Plaintiffs have been identified as having valley fever, a figure which Defendant Withrow cited in June 2013 as a response to Plaintiffs to show that valley fever was not prevalent at Coalinga.  However, a large number of Coalinga staff – including a

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700/ FACSIMILE 310-826-4711

*THIRD AMENDED COMPLAINT*

doctor and a unit supervisor, among others – have been diagnosed with valley fever based on more advanced medical tests.

146.   The tuberculosis questionnaire is ineffective to diagnose valley fever because the initial stages of valley fever are typically asymptomatic, until the infection progresses to much more serious stages of chronic and disseminated Coccidioidomycosis.  Further, once a Plaintiff tests positive for tuberculosis, he will receive annual chest x-rays to screen for tuberculosis and is no longer required to fill out the tuberculosis questionnaire.

147.   The 15 Plaintiffs diagnosed with valley fever have not been receiving adequate medical care.  Coalinga does not have an infectious disease specialist on staff to address the widespread problem of valley fever, and the delay to see an outside specialist is lengthy.  Most Plaintiffs with identifiable valley fever symptoms are allowed to visit a specialist every nine months, which is far below the generally accepted professional standards of care for visiting a specialist for patients with this medical condition.

## VII.

## FIRST CLAIM FOR RELIEF

### (Violations of Plaintiffs' Rights to a Speedy Initial Commitment or Recommitment Trial under the Sixth and Fourteenth Amendments)

148.   Plaintiffs re-allege and incorporate by this reference all allegations set forth in paragraphs 1 through 147 of this TAC as though set forth fully herein.

149.   The Sixth Amendment guarantees an individual's right to a speedy trial in both criminal and civil commitment proceedings.  In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182 (1972), the Supreme Court articulated a four-part balancing test to determine whether trial delay violates the Sixth Amendment: (1) the length of delay; (2) the reasons for the delay; (3) the accused's assertion of the right to speedy trial; and (4) the prejudice caused by

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR. SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

47.

the delay.  No single factor is controlling or necessary; rather, the factors "must be considered together with such other circumstances as may be relevant." *Id.* at 533.

150.   A valid waiver of one's speedy trial right must be knowingly and voluntarily made; the record must demonstrate the existence of an intentional relinquishment of a known right.  *Id.* at 525-26.

151.   The Due Process Clause of the Fourteenth Amendment requires that the State provide an individual with the opportunity to be heard at a *meaningful time* before depriving him of his liberty.  Involuntary commitment under the SVP Act significantly curtails one's liberty interest by subjecting the detainee to potentially indefinite confinement, constitutionally deficient and demeaning conditions, and the stigma of being an SVP, which denotes sexually violent behavior and mental illness.

152.    Because the SVP Act allows the State to detain an alleged SVP pending judicial determination of the commitment petition, California courts have held that procedural due process demands that an SVP commitment trial precede a potential commitment term, which is a "certainly feasible" requirement.  *See Litmon*, 162 Cal. App. 4th at 402-03.

153.   Plaintiffs have experienced significant delays in receiving their initial commitment and subsequent recommitment trials.

154.   Plaintiffs' significant trial delays stemmed from overcrowded state courts and chronic and systemic failures permeating the District Attorney's and Public Defender's Offices, all of which are solely within Defendants' control.

155.   Plaintiffs are prejudiced by the trial delays because of their lengthy and oppressive detention in Coalinga for the duration of delay.

156.   Defendants' failure to promptly provide civil commitment and recommitment trials violates Plaintiffs' constitutional rights to a speedy trial.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

48.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, and each of them, as more fully set forth below.

### SECOND CLAIM FOR RELIEF

### (First Amendment Violations)

157. Plaintiffs re-allege and incorporate by this reference all allegations set forth in paragraphs 1 through 147 of the TAC as though set forth fully herein.

158. The First Amendment protects an individual's right to speak freely or to not speak at all.

159. In the civil commitment context, Plaintiffs retain all First Amendment rights not inherently inconsistent with the circumstances of their detention, including the basic principle that their words or refusal to speak those words cannot be compelled in the guise of providing treatment and then used to justify and prolong their detention.

160. The SOTP punishes Plaintiffs for exercising their First Amendment rights by using their words against them to secure their indefinite confinement, or by using their refusal to speak incriminating words against them to secure their indefinite confinement. Defendants' implementation of the SOTP and creation of the "Catch-22" dilemma violated Plaintiffs' First Amendment rights.

161. Defendants have violated and continue to violate Plaintiffs' First Amendment rights even without the SOTP because all of Plaintiffs' impermissibly obtained admissions in the past have been recorded in Plaintiffs' case files, which can be readily used against Plaintiffs in subsequent recommitment proceedings.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, and each of them, as more fully set forth below.

49.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

## THIRD CLAIM FOR RELIEF

### (Procedural Due Process Violations and Pendent State-Law Claim Involving Forced Medication)

162.   Plaintiffs re-allege and incorporate by this reference all allegations set forth in paragraphs 1 through 147 of the TAC as though set forth fully herein.

163.   Coalinga Defendants who are sued in their individual capacity have routinely violated federal due process and state law requirements by forcibly medicating Plaintiffs in nonemergency situations without these procedural safeguards.

164.   Coalinga Defendants who are sued in their individual capacity have knowledge of the constitutional and statutory violations involved in forcibly medicating Plaintiffs because Plaintiffs have repeatedly raised those concerns to the Coalinga administration, including Defendant King.

165.   Coalinga Defendants who are sued in their individual capacity therefore violated Plaintiffs' due process and statutory rights.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, and each of them, as more fully set forth below.

## FOURTH CLAIM FOR RELIEF

### (Substantive Due Process Violations under the Fourteenth Amendment Resulting from Punitive Conditions of Confinement)

166.   Plaintiffs re-allege and incorporate by this reference all allegations set forth in paragraphs 1 through 147 of the TAC as though set forth fully herein.

167.   At a "minimum," a civil detainee cannot be "subjected to conditions that amount to punishment," including those that (1) are expressly intended to punish, (2) serve an alternative, non-punitive purpose but are nonetheless excessive compared to that purpose, and (3) can be achieved through many "less harsh" alternatives. *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004).

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

50.

**A.**     **Sleep Deprivation**

168.   Even under the more restrictive Eighth Amendment, "[p]ublic conceptions of decency" requires that a civil detainee be "housed in an environment that, if not quiet, is at least reasonably free of noise." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996).

169.   Coalinga's nightly broadcast of the PA system in Plaintiffs' units have no legitimate purpose and has chronically deprived Plaintiffs of sleep.

170.   Defendants have knowledge of the sleep deprivation caused by the PA system yet have taken no actions to remedy the situation.

171.   Defendants therefore violated Plaintiffs' constitutional rights to a non-punitive environment.

**B.**     **Sexual Abuse and Rapes**

172.   The State must take reasonable measures to guarantee the safety of the civil detainees, including preventing their physical or sexual assault at the hands of fellow detainees.

173.   Plaintiffs have been subject to sexual abuse and rapes at the hands of fellow detainees because of Defendants' failure to take reasonable measures to protect them.

174.   Defendants have knowledge of the prevalence of the sexual abuse and rapes yet have taken no actions to remedy the situation.

175.   Defendants therefore violated Plaintiffs' constitutional rights to a non-punitive and reasonably safe environment.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, and each of them, as more fully set forth below.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

*THIRD AMENDED COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700: FACSIMILE 310-826-4711

## FIFTH CLAIM FOR RELIEF

**(Substantive Due Process Violations under the Fourteenth Amendment Resulting from Deficient Medical and Dental Care)**

176. Plaintiffs re-allege and incorporate by this reference all allegations set forth in paragraphs 1 through 147 of the TAC as though set forth fully herein.

177. Constitutionally adequate medical and dental care is a basic human necessity that the State must afford a civil detainee in order to comply with the due process requirements under the Fourteenth Amendment.

178. A civil detainee is entitled to the "professional judgment" standard, which provides a higher degree of protection than the deliberate indifference standard applicable to prisoners. To establish constitutionally inadequate medical treatment, a civil detainee must show that Defendants substantially departed from accepted professional judgment, practice, or standards such that Defendants actually did not base the medical decision on such a judgment.

179. The constitutionally inadequate medical and dental care system at Coalinga has caused and continues to cause widespread harm to Plaintiffs, including inflicting severe and unnecessary pain, injuries, and deaths.

180. Defendants' knowing provision of constitutionally inadequate medical and dental care substantially departs from the established standard of care.

181. Defendants therefore violated Plaintiffs constitutional rights to adequate medical and dental care.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, and each of them, as more fully set forth below.

## VIII.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against all Defendants, and each of them, as follows:

*THIRD AMENDED COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700: FACSIMILE 310-826-4711

### FIRST CLAIM FOR RELIEF

### (Violations of Plaintiffs' Rights to a Speedy Trial under the Sixth and Fourteenth Amendments)

1. Adjudge and declare that the acts, omissions, policies, and conditions described herein violate the Sixth and Fourteenth Amendments based on Defendants' failure to afford Plaintiffs prompt commitment and recommitment proceedings to adjudicate Plaintiffs' SVP status, resulting in excessive delays while Plaintiffs remain in detention.

2. Permanently enjoin Defendants and their agents, employees, and persons acting in concert with them from subjecting (a) existing Plaintiffs to further trial delays by holding their commitment and recommitment proceedings within one year of the issuance of the judgment, and (b) future Plaintiffs to unreasonable trial delays lasting over one year or more in having their commitment and recommitment proceedings.

3. Award the costs of this suit and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a(b), and 42 U.S.C. § 12205.

4. Award such other and further relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF

### (First Amendment Violations)

1. Adjudge and declare that the acts, omissions, policies, and conditions described herein violate the First Amendment based on Defendants' use of (a) Plaintiffs' admissions regarding their past sex crimes and mental illness and their need for treatment against Plaintiffs to secure Plaintiffs' indefinite confinement, and (b) Plaintiffs' refusal to admit to sex crimes or mental illness or their need for treatment, or Plaintiffs' refusal to participate in the SOTP, against Plaintiffs to secure Plaintiffs' indefinite confinement.

53.

2.     Adjudge and declare that Plaintiffs are constitutionally entitled to a treatment program that will address their particular needs with the objective of rehabilitation.

3.     Permanently enjoin Defendants and their agents, employees, and persons acting in concert with them from using any of Plaintiffs' impermissibly obtained past and present admissions that they have committed past sex crimes and have a mental illness and need treatment, or Plaintiffs' impermissibly obtained past and present refusal to participate in the SOTP, against Plaintiffs to secure Plaintiffs' indefinite confinement.

4.     Award the costs of this suit and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a(b), and 42 U.S.C. § 12205.

5.     Award such other and further relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF

**(Procedural Due Process Violations Involving Forced Medication and Pendent State-Law Claim)**

1.     Adjudge and declare that the acts, omissions, policies, and conditions described herein violate the Fourteenth Amendment and California Code of Regulations § 4210, based on Coalinga Defendants' failure in their individual capacity to comply with enumerated constitutional and statutory safeguards before forcibly medicating Plaintiffs at Coalinga.

2.     Permanently enjoin Coalinga Defendants, in their individual capacity, and their agents, employees, and persons acting in concert with them, from disregarding enumerated constitutional and statutory safeguards before forcibly medicating Plaintiffs at Coalinga.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

54.

3.    Appoint a special master to ensure that Coalinga Defendants comply with enumerated constitutional and statutory safeguards before forcibly medicating Plaintiffs at Coalinga.

4.    Award the costs of this suit and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a(b), and 42 U.S.C. § 12205.

5.    Award such other and further relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

### (Substantive Due Process Violations under the Fourteenth Amendment Resulting from Punitive Conditions of Confinement)

1.    Adjudge and declare that the acts, omissions, policies, and conditions described herein violate the Fourteenth Amendment based on Defendants' subjecting Plaintiffs to punitive and unsafe conditions at Coalinga inconsistent with their civil commitment status.

2.    Permanently enjoin Defendants and their agents, employees, and persons acting in concert with them from subjecting Plaintiffs to punitive and unsafe conditions at Coalinga inconsistent with their civil commitment status.

3.    Award the costs of this suit and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a(b), and 42 U.S.C. § 12205.

4.    Award such other and further relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### (Substantive Due Process Violations under the Fourteenth Amendment Resulting from Deficient Medical and Dental Care)

1.    Adjudge and declare that the acts, omissions, policies, and conditions described herein violate the Fourteenth Amendment based on

Spertus, Landes & Unhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

55.

Defendants' failure to provide adequate, appropriate, and timely preventive, routine, specialized, and emergency medical or dental care within generally accepted professional standards of care to Plaintiffs at Coalinga.

2.     Adjudge and declare that Plaintiffs are entitled to adequate, appropriate, and timely preventive, routine, specialized, and emergency medical and dental care within generally accepted professional standards of care for the duration of Plaintiffs' confinement at Coalinga.

3.     Permanently enjoin Defendants and their agents, employees, and persons acting in concert with them from providing constitutionally deficient medical and dental care below generally accepted professional standards of care to Plaintiffs at Coalinga.

4.     Permanently enjoin Defendants and their agents, employees, and persons acting in concert with them from using CDCR officers to transport Plaintiffs to medical appointments outside Coalinga, and instead use Coalinga's Department of Police Services or CDSH staff.

5.     Appoint a special master to ensure that Defendants:

a.     provide adequate, appropriate, and timely preventive, routine, specialized, and emergency medical and dental care at Coalinga within generally accepted professional standards of care;

b.     ensure that Plaintiffs with medical problems are promptly identified, assessed, diagnosed, treated, and monitored within generally accepted professional standards of care;

c.     implement an emergency dental triage to ensure Plaintiffs' prompt dental care;

d.     develop and implement infection control policies and procedures to prevent the spread of infections or communicable diseases within generally accepted professional standards of care; and

e.     provide appropriate annual screening for valley fever.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700  FACSIMILE 310-826-4711

*THIRD AMENDED COMPLAINT*

1    6.    Award the costs of this suit and reasonable attorneys' fees and

2  litigation expenses pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a(b), and 42

3  U.S.C. § 12205.

4    7.    Award such other and further relief as this Court deems just and

5  proper.

6  Dated:   December 28, 2013      SPERTUS, LANDES & UMHOFER, LLP

7

8                           By:   _____

9                                 James W. Spertus
                                   Ezra Landes
10                                 Luke Kuo
11                                 Attorneys for Plaintiffs

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700/ FACSIMILE 310-826-4711

*THIRD AMENDED COMPLAINT*